[Sac. No. 934.  In Bank.—December 16, 1902.]

ULTY McCABE, Respondent, v. JAMES HEALY et al., Appellants.

CONTRACT TO MAKE WILL—INTESTACY—ENFORCEMENT OF TRUST AGAINST HEIRS.—Where it appears that a person who died intestate had, in his lifetime, agreed for an adequate consideration to leave a will upon his death giving all of his estate to a nephew, who had fully performed the agreement upon his part, and had, in reliance upon the contract, so changed his condition and relations that he would not be placed in *statu quo*, and the failure of the deceased to leave the will as agreed, works a fraud upon the nephew, and the granting of equitable relief to him will work no gross injustice to innocent third parties, equity will enforce the agreement, not by compelling a will, but by impressing a trust, upon the heirs in favor of such nephew, and declaring them constructive trustees of the title cast upon them by the intestacy of the deceased.

ID.—PARTIES—ADMINISTRATOR—RIGHTS OF ATTORNEY.—The administrator of the estate of the intestate is not a necessary party to the action in favor of the nephew to enforce a constructive trust against the heirs of the decedent, by reason of his contract with the decedent, and has no interest in the litigation.  His attorney is not precluded from acting as the attorney for the nephew as plaintiff in such action.

APPEAL from a judgment of the Superior Court of Lassen County.  F. A. Kelley, Judge.

The facts are stated in the opinion of the court.

W. M. Boardman, M. Marstellar, Frank J. Sullivan, Albert M. Johnson, A. A. De Ligne, James T. Boyd, and William H. O'Brien, for Appellants.

CXXXVIII. Cal.—6

The action affects the entire estate, and the administrator, whose rightful possession cannot be invaded before distribution, was a necessary party. (*Harwood* v. *Marye*, 8 Cal. 580; *Cunningham* v. *Ashley*, 45 Cal. 493; *McLeron* v. *Benton*, 73 Cal. 342;[1] *Spotts* v. *Hanly*, 85 Cal. 167; *Patchett* v. *Pacific Ry. Co.*, 100 Cal. 510; *Robertson* v. *Burrell*, 110 Cal. 576; *Denis* v. *Bint*, 122 Cal. 44;[2] Woerner on Law of Administration, sec. 337.) The relation of the administrator to the estate is that of a trustee, and, his attorneys sustaining the same confidential and trust relation to the estate, the conduct and acts of the plaintiff and the attorneys, in the prosecution of adverse actions or claims, while such relation exists, are in their very nature collusive, with a common purpose and intent for gain as against the estate which operate in the law as a fraud upon the heirs or beneficiaries of the trust. (*Bergin* v. *Haight*, 99 Cal. 52; Pomeroy on Equity Jurisprudence, secs. 1075, 1077.) A party cannot come into court with fraud upon his lips and obtain relief. To such the halls of justice are not open. (*Gregory* v. *Haworth*, 25 Cal. 657; Pomeroy on Equity Jurisprudence, secs. 397-400.) The law affords the plaintiff an adequate remedy for compensation, and specific performance cannot be enforced. (*Owens* v. *McNally*, 113 Cal. 447; *Russel* v. *Agar*, 121 Cal. 398;[3] Pomeroy on Specific Performance, secs. 99, 100, 101, 136.)

Goodwin & Goodwin, W. N. Goodwin, and N. J. Barry, for Respondent.

Under the facts of this case, the plaintiff is clearly entitled to the relief granted. (*Johnson* v. *Hubbell*, 10 N. J. Eq. 332;[4] *Parsell* v. *Stryker*, 41 N. Y. 480; *Gall* v. *Gall*, 19 N. Y. Supp. 332; *Gupton* v. *Gupton*, 47 Mo. 37; *Faxton* v. *Faxon*, 28 Mich. 161; *Wright* v. *Wright*, 99 Mich. 170; *Shahan* v. *Swan*, 48 Ohio St. 25.;[5] *Brinton* v. *Van Cott*, 8 Utah 480; *Maddox* v. *Rowe*, 23 Ga. 434;[6] *Jaffee* v. *Jacobson*, 48 Fed. Rep. 21, 1 Cir. Ct. Ap. 24; *Townsend* v. *Vanderwerker*, 160 U. S. 171; *Brown* v. *Sutton*, 129 U. S. 239; *Svanburg* v. *Fosseen*, 75 Minn. 359;[7] *Slingerland* v. *Slingerland*, 39 Minn. 197; *Rhodes* v. *Rhodes*, 3 Sand. Ch. (279) 305; *Van Dyne* v. *Vreeland*, 11 N. J. Eq. 370,

---

[1] 2 Am. St. Rep. 814.
[2] 68 Am. St. Rep. 17.
[3] 66 Am. St. Rep. 35.
[4] 66 Am. Dec. 773.

[5] 29 Am. St. Rep. 517.
[6] 68 Am. Dec. 535.
[7] 74 Am. St. Rep. 490.

12 N. J. Eq. 142; *Sutton* v. *Hayden,* 62 Mo. 101; *Sharkey* v. *McDermott,* 91 Mo. 647;[1] *Healy* v. *Simpson,* 113 Mo. 340; *Kofka* v. *Rosicky,* 41 Neb. 328;[2] *Godine* v. *Kidd,* 19 N. Y. Supp. 355, 46 N. Y. St. Rep. 813; *Burns* v. *Smith,* 21 Mont. 251;[3] *Barrett* v. *Geisinger,* 179 Ill. 240; *Bolman* v. *Overall,* 80 Ala. 451;[4] *Rivers* v. *Rivers,* 3 Desaus. Eq. 195;[5] *Manning* v. *Pippen,* 86 Ala. 361;[6] *Schutt* v. *Missionary Society,* 41 N. J. Eq. 115; *Vreeland* v. *Vreeland,* 52 N. J. Eq. 387; *Carmichael* v. *Carmaehr,* 72 Mich. 76;[7] Schuler on Wills, sec. 454; Parson on Contracts, secs. 406, 407; Pomeroy on Specific Performance, p. 268; 12 Am. & Eng. Ency. of Law, p. 974.) The administrator has no interest in a contest merely over the right of succession to the estate. (*Goldtree* v. *Thompson,* 83 Cal. 420; *Roach* v. *Coffee,* 73 Cal. 282; *Adams* v. *Woods,* 8 Cal. 315; *Bates* v. *Ryberg,* 40 Cal. 465; *Estate of Wright,* 49 Cal. 550; *Rosenberg* v. *Frank,* 58 Cal. 420; *Estate of Marrey,* 65 Cal. 287; *In re Jessup,* 80 Cal. 625; *Jones* v. *Lamont,* 118 Cal. 508.)

GAROUTTE, J.—The basic facts upon which this litigation has been inaugurated are these: Matthew Healey, fifty-four years of age, engaged in the stock-raising business, and of considerable means, lived in Lassen County, state of California, in the year 1881, and for a long time prior thereto. He had not a relative in the United States, and during that year he returned to his old home in Ireland to visit his brother and two sisters there residing. He had been absent from the land of his birth for thirty-seven years, and for twenty-five years last past his relatives had thought him dead. Plaintiff, Ulty McCabe, was then a boy of fourteen years of age, residing there with his mother, his father being dead, and she being Healy's sister. Upon his visit Healy fancied this boy, and after repeated importunities addressed to his brother, who was guardian of the boy, and also addressed to the boy and his mother, to the end that he might accompany him upon his return to California, he, Healy, finally agreed with plaintiff and plaintiff's mother and his guardian that, "if the two latter would surrender plaintiff to his care and control, and,

---

[1] 60 Am. Rep. 270.
[2] 43 Am. St. Rep. 685.
[3] 69 Am. St. Rep. 653.
[4] 60 Am. Rep. 107.

[5] 4 Am. Dec. 609.
[6] 11 Am. St. Rep. 46.
[7] 16 Am. St. Rep. 528, and note.

if plaintiff would accompany him to his home in California, and there accept his care, instruction, and direction, and industriously learn and care for his (Healy's) business, his property and personal interests, and continue so to do as long as he, said Healy, lived, he would take good care of plaintiff, treat him in all respects as if he was his own son, and upon his death plaintiff should have all the property of every character and wheresoever situated which he (Healy) should own at the time of his death, and that he would will to plaintiff all of his estate." Plaintiff, his mother, and his guardian accepted this proposition made by Healy, and upon the strength of these promises, plaintiff was given into the possession of Healy, brought by him from Ireland to Lassen County, California, and for seventeen years these two people lived together, keeping faith to the full letter and spirit of the aforesaid understanding. During the later years of Healy's life, under the care and guidance of this plaintiff, his business interests prospered and increased, and for several years prior to Healy's death, his whole property, consisting of ranches, cattle, and horses, was under the actual control and in the possession of plaintiff, by virtue of the understanding entered into in Ireland, and subsequently agreed to and ratified by both parties at the time the property was placed in the possession of plaintiff. Unfortunately for plaintiff, Healy died intestate, and this action is now brought for the purpose of securing a decree to the effect that, subject to administration, the title of Healy's estate should be declared vested in plaintiff.

The principle of law invoked by this bill cannot be gainsaid, and it is well stated by Professor Pomeroy in his work on Specific Performance (p. 268), in this language: "Courts of equity will, under special circumstances, enforce a contract to make a will, or to make a certain testamentary disposition; and this may be done, even when the agreement was parol, where in reliance upon the contract the promisee has changed his condition and relations so that a refusal to complete the agreement would be a fraud upon him. The relief is granted, not by ordering a will to be made, but by regarding the property in the hands of the heirs, devisees, assignees, or representatives of the deceased promisor, as impressed with a trust in favor of the plaintiff, and by compelling defendant, who

must of course belong to some one of these classes of persons,
to make such a disposition of the property as will carry out
the intent of the agreement.'' In *Owens* v. *McNally,* 113
Cal. 144, the court, in speaking of the general principle here
involved, declared it to be supported ''by the overwhelming
weight of authority.'' And Mr. Freeman, in his note to *John-
son* v. *Hubbell,* 66 Am. Dec. 784, in discussing this question
declares: ''It is not only in harmony with sound principle
that a person may make a valid agreement binding himself
to dispose of his property in a particular way by last will
and testament, but it is supported by an almost unbroken
current of authorities both English and American.''    The
author then cites scores of cases in support of the principle
enunciated.

In *Owens* v. *McNally,* 113 Cal. 144, an additional element
was recognized as necessary before a chancellor would be jus-
tified in granting equitable relief in cases of this character,
and that element was to the effect that the granting of the
relief must not operate in the commission of gross injustice to
innocent third parties.  It therefore follows in this case that
if the deceased Matthew Healy, for an adequate considera-
tion, agreed to leave a will upon his death, by its terms giving
all of his estate to the plaintiff, and that he died without
leaving such a will, and, if plaintiff cannot be placed in *statu
quo,* and the failure of the deceased, Healy, to leave the will
as agreed works a fraud upon plaintiff, and the granting of
equitable relief to plaintiff would not work a gross injustice
upon innocent third parties, then a court of equity will en-
force Healy's agreement by declaring his heirs constructive
trustees of the title cast upon them by reason of his dying
intestate.

The facts of this case, when tested by the law as the court
finds it, demand the relief given by the chancellor's decree.
Indeed, upon its facts the case is impregnable.  In an exam-
ination of many cases where relief has been decreed similar
to that here sought, we find no case where the facts appeal
more convincingly to the chancellor than they do in the case
at bar.  Appellants in their brief have cited no case where
relief has been denied upon facts in any substantial degree
similar to those here presented, and it is doubtful if there is
such a case to be found in the law-books.  It is not plain to

the understanding what additional element in the nature of further covenants between Healy, upon the one part, and the boy, his guardian, and his mother, upon the other part, could have been inserted into this contract which would have given it greater legal strength.

It is not the purpose of this opinion to analyze in detail cases from sister jurisdictions where relief has been decreed upon facts in no way more commendable to the chancellor than those before us on this appeal. But the court will content itself with a citation of those cases, accompanied by short extracts from some of them. (*Burns* v. *Smith,* 21 Mont. 251; [1] *Kofka* v. *Rosicky,* 41 Neb. 328; [2] *Johnson* v. *Hubbell,* 10 N. J. Eq. 332; [3] *Svanburg* v. *Fosseen,* 75 Minn. 359; [4] *Van Dyne* v. *Vreeland,* 12 N. J. Eq. 142; *Wright* v. *Wright,* 99 Mich. 170; *Sutton* v. *Hayden,* 62 Mo. 101; *Sharkey* v. *McDermott,* 91 Mo. 647; [5] *Healy* v. *Simpson,* 113 Mo. 340; *Brinton* v. *Van Cott,* 8 Utah, 480; *Godine* v. *Kidd,* 19 N. Y. Supp. 335; 46 N. Y. St. Rep. 813; *Rivers* v. *Rivers,* 3 Desaus. Eq. 195; [6] *Schutt* v. *Missionary Society,* 41 N. J. Eq. 115.)

In *Jaffee* v. *Jacobson,* 48 Fed. 21, 1 Cir. Ct. Ap. 24, the judge, after denying relief upon insufficient facts, said: "In all the cases called to our attention in which relief was afforded, it appears that the promisees had substantially discharged the obligations which they had severally assumed. In most, if not all, instances they had lived in the promisor's household as members of his family, and had rendered faithful and effectual services for a long period of years. It was not possible, therefore, to administer adequate relief otherwise than by decreeing specific performance." In *Burns* v. *Smith,* 21 Mont. 251, [7] the court said: "We come to this conclusion more readily as we are of the opinion that the parties to the alleged contract never contemplated that the services of plaintiff were to be or could be compensated in money, and because the parties cannot now be placed in *statu quo.* Besides, there are no intervening rights of third parties or innocent holders of the estate involved. . . . We think such disposition of the case is but the carrying out of the cherished

---

[1] 69 Am. St. Rep. 653.

[2] 43 Am. St. Rep. 685.

[3] 66 Am. Dec. 773, and note.

[4] 74 Am. St. Rep. 490.

[5] 60 Am. Rep. 270.

[6] 4 Am. Dec. 609.

[7] 69 Am. St. Rep. 653.

intention and desire and contract of the deceased in relation to his estate. The deceased had the right to dispose of his property as he pleased, and his contract to dispose of it, when free from fraud, imposition, and surprise, and being reasonable and moral, will be carried out and enforced by a court of equity. This is equity. This is right. It is real justice to carry out and enforce such contracts according to the intention of the parties in such cases." This language to the letter meets the facts of the case at bar. In *Brinton* v. *Van Cott*, 8 Utah, 33, the facts in all substantials are similar to those of the present case, and the court there said: "On that day Lydia Davis proposed to plaintiff, who was then a girl of sixteen years, that if she would come and live with and take care of her until the time of her death, she would leave all her property to plaintiff, and her property should belong to the plaintiff at the time of her death. . . . After considering the matter, the offer was accepted, and she went and lived with Lydia Davis on the terms of the agreement so made and accepted, became a part of her family, worked for her and lived with her, and did and performed everything that a daughter could do for said Lydia Davis while she lived. . . . Lydia Davis was in health and owned her property. She had an undoubted right to dispose of it during her life as she saw fit to do. She knew the disadvantage of living alone. She had no relatives living in this country, and no one to cherish, love, and care for her in her declining years. She knew the plaintiff, probably had become attached to her during the time the previous services were rendered by her. She sought her services and care as those best calculated to serve her purpose during the remainder of her life, and was to reward her by bestowing upon her all the property she had at her death. She had confidence in the honesty and integrity of the plaintiff. It seems that confidence was well bestowed. The plaintiff not only accepted the offer, but satisfactorily performed her part of the contract. . . . It required this young girl to give up plans of future independence, home, and family, and probably devote all the earlier period of her life, devotion, affection, and services to this friendless old lady. . . . It appears from the complaint that the deceased was well satisfied with the agreement she had made, and that it was carried out according to her wishes. The services ren-

dered were of such a peculiar character that it would be exceedingly difficult and probably impossible to estimate their value to the deceased by any pecuniary standard. It is evident from the contract deceased did not intend to measure such services, care, and company of the plaintiff by any such pecuniary standard. The plaintiff having performed her part of the mutual agreement under the circumstances alleged in the complaint, and the deceased having derived the full benefits of such contract as was contemplated by the parties, we think a failure on the part of the defendant to perform its part would work a fraud upon the rights of the plaintiff, and that a specific performance should be decreed." There is much more in the facts of the case at bar to commend itself to the chancellor than can be found in the case just quoted. In *Healy* v. *Simpson,* 113 Mo. 340, the court said: "And when the mother sent her child to dwell in another's family in a distant state, she yielded much affection and love; and Brewster by the same act gained the companionship of one who added much, no doubt, to his enjoyment of life. . . . In the very nature of things, nine years in the life of a child so change conditions that it is out of the power of an earthly tribunal to restore the parties to their original situation and environment, and the courts therefore compel them to stand upon and abide by the record they have made."

Appellants seek for consolation in the California case of *Owens* v. *McNally,* 113 Cal. 144, but no consolation is found for them there. In that case the court denied relief because subsequent to the making of the contract McNally, the promisor, married, and this wife was living at the time of his death. In speaking of this marriage the court said: "The only permissible conclusion is, therefore, that the parties contracted in contemplation of that event. Upon its happening the rights of innocent third parties intervened, and a decree of specific performance could not be awarded." To have granted the relief sought in that case would have visited a great injustice upon the wife, an innocent third party, and this the chancellor will not do, and it is plain upon a reading of the opinion that relief was denied in that case by reason of this marriage. This is apparent, for we find the following language of the court at the threshold of the discussion of this question: "But we pass to a much more serious question,

whether specific performance, if decreed in this case, would not be harsh and oppressive, and unjust to innocent third parties." And it is plain the decree was reversed for this reason, notwithstanding the following language may be found in a previous portion of the opinion: "Neither the length of time which plaintiff was to spend in living with and caring for the intestate is made certain, nor the kind or character of the services which she was to render. What position she was to occupy in his household is not made plain. Whether she was to remain there in the capacity of a daughter, housekeeper, or menial servant is in doubt." In the case at bar none of the difficulties here suggested present themselves when the facts are examined, for in this case the length of time which plaintiff was to spend in living with, working and caring for the intestate is certain. The kind and character of services which he was to render is definite and certain. The position which he was to occupy in the household is made plain,—he was to be treated as the son of Healy.

The administrator of the estate of Healy, deceased, was not made a party defendant by the bill, and it is now asserted that the demurrer should have been sustained upon the ground of nonjoinder of parties defendant. Necessarily this contention goes to the length of asserting that a decree rendered without the presence of the administrator as a party defendant is absolutely void. Section 379 of the Code of Civil Procedure provides: "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein." Necessary parties defendant to an action in equity are those without whom no valid decree can be made. And when an individual has an interest or right in the subject-matter of the litigation which is liable to be destroyed or diminished by the plaintiff's success in the litigation, he has an interest which makes him a necessary party.

Tested in the crucible of both reason and authority, the court concludes that the administrator of the estate of Healy, deceased, was not a necessary party defendant to the present litigation. Upon sound reason it is plain he has no interest in the result of the litigation. This litigation involves solely the ownership of the residue of the estate of Matthew Healy,

deceased,—a matter in which the administrator has no pos-
sible interest,—a question to him of indifferent concern.
Upon principle this litigation is in no respect different from
that where Jones is contesting against Smith as to which of
them is the heir and entitled to the residue of Healy's estate.
In such case the administrator would be over-zealous and
presumptuous if he interjected himself as a party into that
legal controversy. Here his rights are in no way affected by
the decree rendered in accordance with the prayer of plain-
tiff's bill. It therefore follows that if he were made a party
defendant he would be unable to present an answer to the
bill that could stand alone. Again, he is not a necessary party
to the bill, for no relief from the court is asked against him,
and in fact no relief was taken against him by the decree.
It may be further suggested that it is not conceivable what
character of judgment could have been taken against him
which would have affected his rights and interest as admin-
istrator of the estate.

The law of this state, evidenced by many decisions of this
court, forbids an administrator of an estate from participat-
ing in litigation of the character presented by the record
brought here upon this appeal. This court has many times
decided that under like circumstances to those here presented
the administrator is a wholly indifferent party. It is for the
court to say to whom the residue of the estate shall go, and
under what conditions it shall go, and it is the duty of the
administrator to deliver the residue of the estate to the parties
designated by the court. (*Estate of Wright,* 49 Cal. 550;
*Rosenburg* v. *Frank,* 58 Cal. 420; *Roach* v. *Coffee,* 73 Cal.
282; *Goldtree* v. *Thompson,* 83 Cal. 420; *Jones* v. *Lamont,*
118 Cal. 499.[1]) For a further consideration of the particular
question here discussed the court also refers to *Estate of
Healy,* 137 Cal. 474, where it is said in speaking of this
litigation: "It is in effect a suit to determine a contro-
versy between the different heirs as to their respective
rights of inheritance, and in such a controversy it is well
settled that the administrator has no interest, but is a mere
officer of the court, holding the estate as a stakeholder to be
delivered to those whom the court shall decide to be entitled
thereto. (*Roach* v. *Coffey,* 73 Cal. 281.) The complaint sets

[1] 62 Am. St. Rep. 251.

forth no claim against the estate of the deceased or against the administrator, or against his right to retain the possession of the property during the administration of the estate, or against the application of any of the property in his hands to the purposes of such administration. . . . In the action of Ulty McCabe, the administrator is not brought within either of these conditions, and there was therefore no ground upon which he would have been authorized to seek to intervene therein, or justified in expending the money of the estate in defending the action against the plaintiff.''

Some claim is advanced to the effect that the attorneys in representing this plaintiff are guilty of fraud, inasmuch as they were at the same time acting as attorneys for Hosselkus, the administrator of the estate of Healy. There is nothing whatever in this claim. Hosselkus not even being a proper party to the present litigation, as the court here decides, therefore there is no reason in law why these attorneys should not be competent to represent this plaintiff. And it was so decided upon the appeal in the *Estate of Healy*, 137 Cal. 474. The court there said: ''Whether the contract between Mathew Healy and Ulty McCabe had been made or not was no concern of the administrator, and did not affect his functions in the administration of the estate or his relations to any of its property in his possession. If, in fact, the contract was made as alleged in the complaint, Ulty McCabe had the right to have it enforced as against the other heirs (*Owens* v. *McNally*, 113 Cal. 444), and as the making of the contract was disputed by the other heirs, he had the right to institute an action for the purpose of establishing that fact, and for that purpose he was at liberty to employ as his attorneys the attorneys of the administrator. The right of one heir to contract with another for the conveyance of his inheritance is unquestioned; as is also the right to enforce such contract, and the attorney for the administrator is not precluded from acting as the attorney for its enforcement.''

For the foregoing reasons the judgment is affirmed.

Harrison, J., McFarland, J., and Henshaw, J., concurred.

VAN DYKE, J., dissenting.—I dissent. It may be conceded that a court of equity will specifically enforce an agree-

ment of the kind under consideration, under certain conditions. Among such conditions required are, that the services rendered or acts done by the promisee are not susceptible of a money valuation; that they are of such peculiar character that it is impossible to estimate their value by a pecuniary standard, and where the party who has performed such services could not be restored to the situation in which he was before the rendition of the services. But the question whether relief shall be granted or denied in a particular case addresses itself peculiarly to the conscience of the chancellor, and before plaintiff entitles himself to it many considerations are to be entered into and are to be weighed. If the contract be indefinite and uncertain, and a remedy asked for harsh or oppressive or unjust to innocent third parties, or against public policy, or inequitable, such a contract will not be specifically enforced. *Owens* v. *McNally,* 113 Cal. 444, was a case in many essential particulars similar to the one under consideration. Lawrence McNally was a brother of the plaintiff's mother, and resided at the time at Eureka, Humboldt County, and it is found by the trial court in that case that in 1881 said McNally, never having been married, and fifty-four years old, went to the state of Michigan, and then and there represented to the plaintiff and to her parents that he was possessed of money and property worth more than $20,000, and that he had no one to care for him; that he desired that the plaintiff should leave her home and parents and accompany him to California, and thereafter live with him and care for him; and then and there said Lawrence McNally promised and agreed with plaintiff that if she would accompany him to California and live with him and care for him he would give or bequeath to her all property which he might own at the time of his death. Under this agreement plaintiff left her home and parents, accompanied McNally to California, and from that time until his marriage in 1893, lived with him and took care of him, and devoted her time, labor, and energy caring for his health and comfort, and duly performed all the conditions of said contract on her part to be performed by the terms thereof. McNally, however, married, and at his death left separate estate in real and personal property in the county of Humboldt of the value in excess of $20,000. The court having found the contract

as stated in the complaint, and also that the plaintiff had per-
formed all the conditions on her part to be performed in ac-
cordance therewith, as a matter of law concluded that as the
contract was in relation to real property it was within the
statute of frauds; that the services rendered and the care
bestowed by the plaintiff under the contract were not of so
peculiar or exceptional nature as that they could not be com-
pensated for in money, and that her performances of these
services and her bestowal of this care did not operate as a
part performance, which would take the contract out of the
operation of the statute of frauds; that the contract was in
relation to both real and personal property, and it was there-
fore to be regarded as an entirety and could not be enforced
as to the personal property; and judgment was accordingly
entered for the defendants, who consisted of the widow of
the deceased and other heirs at law.  On appeal this court
says:  ''The court by its decree denied plaintiff specific per-
formance.  We think the decree was just, and that plaintiff,
for her recovery, must resort to an action in *quantum
meruit*,'' and judgment was affirmed.

The court below in this case finds ''that the services so
rendered said Healy by plaintiff from the 5th of July, 1881,
until the death of said Healy, were of a peculiar and excep-
tional character, incapable of being compensated for in
money, and such services were not intended by said Healy or
this plaintiff to be compensated for in money.''  This, how-
ever, is a mere conclusion not supported by the facts of the
case.  The facts as found are, that the plaintiff, at the re-
quest of the deceased, in 1881, when about fifteen years of
age, left Ireland and accompanied his uncle to this country,
and that upon reaching the home of Matthew Healy—being
his ranch in Lassen County—said Healy put plaintiff to work
on and about said premises and business, and thereafter, for
several years, personally instructed, directed, and advised
plaintiff as to the mode and manner of doing his work and
caring for and managing the cattle and horses on said ranch;
that the plaintiff, acting under the directions and advice of
his uncle, in the performance of this work, endeavored to
qualify himself to properly care for and manage the prop-
erty and business of said Healy, and until the death of said
Healy, September 26, 1897, devoted his entire time, labor, and

energy in learning the business of said Healy, and in conducting and carrying on and managing the same to his entire satisfaction. The work and services performed by the plaintiff required no professional skill or knowledge, and was no different from that that might be performed by any ordinary employee. There is nothing in the nature of such services to justify the conclusion or inference that they cannot be compensated for in money. In fact, that is the ordinary and universal mode of compensating such services. Nor can it be said that to leave Ireland and come to this country constitutes such peculiar services that they cannot be compensated for in money. Thousands and hundreds of thousands have emigrated from Ireland to this country, paying their own expenses, and considering themselves well compensated therefor in the wider field for enterprise and better opportunities afforded in this country than in the old country they had left. The property owned by Healy at the time of his death, as found by the court, consisted of a large stock ranch in Lassen County, on which were about seventeen hundred head of cattle and four hundred head of horses; also another ranch situated in another part of said county, on the south fork of Pit River, known as the "Healy River Ranch," and another ranch in the same county, known as "Spires Place," a certain tract of land near the town of Alturas, and he also owned a ranch in Corvallis, Oregon, known as "Healy's Oregon Ranch," and certain lots of land near the city of Los Angeles, and a large amount of machinery, implements, wagons, and other personal property used on a ranch, together with household furniture, all of the value of $100,000.

Another peculiar feature of this case is, that it is not brought against the administrator, but against the brother and sister of the deceased and certain nephews and nieces, his heirs. Letters of administration upon the estate of Matthew Healy, deceased, were issued to J. W. Hosselkus on the first day of November, 1898, since which time he has been, and still is, the acting, qualified administrator of said estate, and as such took possession of all the property of the estate, both real and personal, and at the commencement of this action he was, and still is, in the possession of the same as such administrator, and administering said estate; that Goodwin & Goodwin have been at all times and still are the at-

torneys for said Hosselkus as administrator of said estate, and they are also, and at the commencement of this action were, the sole attorneys for the plaintiff in the prosecution of this action.

The administrator's relations to the estate are those of a trustee for the benefit of the creditors and heirs, and his attorneys are in the same confidential relation. (*Bergin* v. *Haight,* 99 Cal. 56.) The act of such attorneys of the administrator is the act of the administrator, and neither he nor such attorneys are permitted to act adversely to their trust: "Neither the trustee nor any of his agents may take part in any transaction concerning the trust in which he or any one for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary." (Civ. Code, sec. 2230.) "A trustee may not use the influence which his position gives him to obtain any advantage from his beneficiary." (Civ. Code, sec. 2231.) "No trustee, so long as he remains in the trust, may undertake another trust adverse in its nature to the interest of his beneficiary in the subject of the trust, without the consent of the latter." (Civ. Code, sec. 2232.) "Every violation of the provisions of the preceding sections of this article is a fraud against the beneficiary of the trust." (Civ. Code, sec. 2234.) The beneficiaries in this case are the heirs of Matthew Healy. The defendants constitute those heirs as well as the plaintiff, McCabe. It would not be contended for a moment that the administrator of the estate, had he been a lawyer, could have brought this suit as attorney of plaintiff, while acting as such administrator, and his attorneys occupy the same position. In other words, he and they, in contemplation of law, are one in everything pertaining to the settlement of the estate and its proper distribution among the heirs entitled thereto. In the case of *Owens* v. *McNally,* the action was commenced against the administratrix of the estate as well as the heirs. It is very plain in this case why it was not commenced against the administrator, as in that case his attorneys could not also have been attorneys for the plaintiff.

Persons in whose behalf an action or proceeding is prosecuted against an executor or administrator, upon a claim or demand against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased,

cannot be a witness. (Code Civ. Proc., sec. 1880, subd. 3.) The purpose of this provision of the law is very obvious. This action, however, as already stated, is not against the administrator, and, technically, it is not founded upon a claim or demand against the estate; but in substance it is a proceeding to capture the whole estate in bulk upon this parol agreement, in reference to which one party is left free scope in giving his testimony, whereas the lips of the other party are closed in death.

This does not present a case where equity and good conscience require that a specific performance should be decreed, but it is rather one where plaintiff should be remanded to his action at law as upon a *quantum meruit,* the same as in *Owens* v. *McNally,* 113 Cal. 444.

Since this dissenting opinion was written, the main opinion has been revised and somewhat elaborated. In the revised opinion the fact that McNally married and Healy did not, it is claimed, distinguishes that case from this, and that though the court was right in denying specific performance there, the contract should nevertheless be specifically enforced here. An agreement of the kind here in question, it would then seem, depends upon the fact whether the party who makes it subsequently marries or not. If this be so, it would then render the contract objectionable on the further ground of uncertainty, and, as said in the McNally case, the contract, among other requirements, "must be definite and certain."

The *Estate of Healy* referred to was argued and submitted with this case, and the opinion in that (to which I dissented) is not controlling authority in this, simply because it happens to be filed before.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing.