[No. 1.    Third Appellate District.—May 29, 1905.]

## In the Matter of the Guardianship of the Person and Estate of SARAH C. HAYDEN, Incompetent.

GUARDIANSHIP—INCOMPETENT PERSON—SALE OF REALTY.—The guardian of an incompetent person may be authorized to sell the real property of the incompetent, where it appears necessary and for the best interest of the estate, in order to pay expenses, debts, and cost of maintaining the incompetent ward.

ID.—OPPOSITION TO SALE—CONTRACT TO DEVISE PROPERTY—INSUFFICIENT PROOF—COMPENSATION—IMPOSSIBILITY OF PERFORMANCE—UNEXPLAINED FAILURE.—An opposition to the sale by one who seeks to enforce a contract with the incompetent to devise the property, for personal services, board and care for life, and cost of burial and monument, will not be sustained, nor the contract enforced in equity, where the proof is not clear, positive, nor convincing as to the existence and terms of such contract, or the services to be rendered, and where the services rendered may be fully compensated, and it is impossible to make a binding offer of full performance, and there is an unexplained failure to perform the alleged contract prior to the guardianship.

ID.—RULING UPON EVIDENCE—QUESTION TOO BROAD.—It was not error to overrule a question which was too broad, so as to include any agreement in reference to all real property, and which was not confined to the agreement alleged.

ID.—CROSS-EXAMINATION—WHOLE OF CONVERSATION.—It was proper on cross-examination to bring out the whole of a conversation partially testified to in the examination in chief.

APPEAL from an order of the Superior Court of San Joaquin County for sale of the real estate of an incompetent person.    W. B. Nutter, Judge.

The facts are stated in the opinion of the court.

A. H. Carpenter, for Appellant.

Nicol & Orr, and E. P. Foltz, for Respondent.

McLAUGHLIN, J.—On March 20, 1903, A. L. Westing, a grandson of Sarah C. Hayden, was appointed guardian of her person and estate.

On April 11, 1903, said guardian applied to the court for an order of sale of certain real property, alleging in his petition that such sale was for the best interest of the estate, and was necessary, because the personal property and income from the real property were insufficient to pay the expenses of guardianship, the outstanding debts, and costs of maintaining his ward.

The appellant, F. H. Collins, filed objections and answers to said petition, denying all the above-recited averments. It is then alleged that on September 1, 1901, the said incompetent entered into a contract whereby she agreed that if he would come to Stockton and live with her, act as her business agent and manager, furnish her board, care, comfort, companionship, and protection during her life, and after her death bury her and erect a monument over the graves of herself and husband, she would give and bequeath unto him, among other property, the parcel of land here sought to be sold. He then alleges a part performance of said contract, and avers that said guardian, hoping to benefit himself, as a probable heir of said incompetent, prevented the further performance of this contract, and is endeavoring to repudiate the same, and cause said property to be unnecessarily sold in violation of its terms.

Under these pleadings the issues presented were tried, the order granted, and contestant appeals therefrom upon a bill of exceptions containing many assignments of error in rulings on the admission of evidence, and specifying that the evidence is insufficient to sustain the order in the particulars set forth in the above recital of issuable facts.

It can hardly be contended that the property of an incompetent cannot be used for her maintenance and the payment of her debts, as well by the guardian as by herself, if competent. Nor can it be successfully maintained that the guardian cannot be authorized to sell any part of the real property for such purpose. (Code Civ. Proc., secs. 1777-

1781; *Smith* v. *Biscailuz*, 83 Cal. 350, [21 Pac. 15, 23 Pac. 314] ; *Fitch* v. *Miller*, 20 Cal. 352.)

The evidence is entirely sufficient to sustain the conclusion that such sale was necessary, and for the best interest of the estate. The evidence of appellant alone would sustain that conclusion; for if he boarded Mrs. Hayden for a considerable time, and the property without that burden yielded a surplus of only thirty-nine dollars, it appears that the income is entirely inadequate to entirely maintain the ward now.

In any event, the evidence is conflicting, and the conclusion of the court below must be sustained.

But it is claimed that this *specific parcel of land* could not be sold until other property, not within the contract mentioned, had been disposed of.

Equity recognizes, and will enforce, such contracts as the one here pleaded, but it demands that the evidence to prove their existence and terms be clear, positive, and convincing. And the contract must be definite, certain, and just, and in consonance with sound public policy. (*Owens* v. *McNally*, 113 Cal. 452, [45 Pac. 710].)

The services rendered must be such that they cannot be fully compensated in money. (*McCabe* v. *Healy*, 138 Cal. 86, [70 Pac. 1008] ; *Owens* v. *McNally*, 113 Cal. 450, [45 Pac. 712].)

And when the contract is for conveyance of land, in consideration for personal services, extending through a future indefinite period, and the relief sought is the prevention of a sale of the land, until specific remedy is ripe—it being manifestly impossible to make a binding offer and tender of performance of such personal services—the relief asked will be denied, for the obvious reason that rights will not be conserved which may never accrue. (*O'Brien* v. *Perry*, 130 Cal. 526, [62 Pac. 927] ; *Stanton* v. *Singleton*, 126 Cal. 665, [59 Pac. 147] ; *Grimmer* v. *Carlton*, 93 Cal. 193,[1] [28 Pac. 1043] ; *King* v. *Gildersleeve*, 79 Cal. 504, [21 Pac. 961].)

Then, too, "Courts will be more strict in examining into the nature and circumstances of such agreements than any others, and would require very satisfactory proofs of the fairness and justness of the transaction." The nature and character of the services to be rendered must be certain;

[1] 27 Am. St. Rep. 171.

and, in fact, certainly must exist as to all terms of the contract. (*Owens* v. *McNally,* 113 Cal. 452, [45 Pac. 712] ; *McCabe* v. *Healy,* 138 Cal. 86, [70 Pac. 1008].)

Tested by these rules, the evidence here presented is far from being satisfactory.

The appellant himself seems to be doubtful as to whether he was to take the land by deed during life, or by testamentary disposition; and seems equally doubtful touching the precise nature of the services to be rendered by him, and the position he was to occupy in the household. At times his evidence conveys the idea that she was to convey the land to him presently, and again it was to come to him at her death.

A carpenter by trade, he worked continuously, and on one occasion at least he was paid for working on her property.

Up to December, 1902, the executor of her husband's estate had charge and control of the property, and it does not appear that appellant ever did more than to collect rent occasionally and turn the money over to his aunt.

His wife, who heard both parties discuss the agreement, is equally unsettled as to their *status* in the household, the character of services to be rendered, and the quantity of property to be given or bequeathed. Her version of the matter in her own language is: ''We were simply to pay her board, and she was to board with us; she was to furnish the house in which we live, and as she stated to me, her own self, several times, we were to make a home for her, and we were to have a home free of rent; that item of rent was distinctly mentioned. It was just like a son coming to live with his mother, as far as I can state, it was not a son coming to live with his mother, but that is the way she said it.''

From January 30, 1903, Mrs. Hayden paid the servant, bought her own provisions, and the servant cooked them for her. And she paid the grocery bills for herself and the girl.

The testimony of Mr. Webster is in accord with the evidence of Mrs. Collins on salient points. And his evidence relating to the escrow deed from Mrs. Hayden to Collins absolutely negatives the existence of any contract to pass *this property* to Collins by deed or testamentary disposition. For if she was thus bound to make a disposition of *particular property,* it is more than probable that it would have been

included in a deed deliverable after her death, and this parcel was not so included.

Mr. Collins apparently pursued his occupation as a carpenter without interruption. He had the use of *her* house rent free and obtained his wood from *her* ranch. In fact, it might be said that he enjoyed *quid pro quo* for every service rendered.

His evidence in direct examination fitted his legal rights with such nicety as to give to his conduct and all the surrounding circumstances peculiar significance.

Why did he charge for work on her property? Why his ignorance of her affairs? And why did she, without apparent objection on his part, have her meals prepared by her servant, under the same roof where separate meals for himself and family were prepared? These circumstances, significant and potent, must be weighed with his testimony.

Moreover, he testifies that his services, except his personal affection, can be compensated in money, and as his personal affection may still be bestowed, and is not in law a subject of compensation, he can be placed in *statu quo*. (*McCabe* v. *Healy*, 138 Cal. 86, [70 Pac. 1008].)

Then, too, he did not perform the contract he attempts to prove, for from January 30, 1903, and until the guardian removed the incompetent from her home, appellant did not pay her board or other expenses, and he does not explain such failure.

The evidence is voluminous, and no necessity exists for further recitals therefrom. Sufficient appears to point the reason for holding, as we do, that the evidence is not of that clear, positive, and convincing nature or the contract of such character that the relief here sought could be given.

We have examined the errors complained of in subdivisions 8 to 16 of appellant's brief and find no prejudicial error. It was not error to sustain the objection to the question mentioned in subdivision 8. The question was broad enough to include *any agreement,* and the objection was, that it was incompetent *if calculated to show any interest* of Collins *in any property* belonging to Mrs. Hayden. The property, admittedly, was all real property, and any parol agreement showing *a present interest* in such property was objectionable. There was testimony in the case *at that time*

tending to show that a deed had been made to Collins, and if the conversation concerning this agreement did not relate to the contents of such alleged deed, and did relate to an agreement to make testamentary disposition of property, counsel should have so explained, and then confined his question to the agreement sought to be established. He did not do so, or attempt to follow the subject further; and as the state of the case justified the objection and ruling, there was no error. It was proper cross-examination to draw from Mr. Webster *all* the conversation he had with Mrs. Hayden. He had, on direct examination, testified concerning conversations with her, and appellant could hardly expect that portions which might be unfavorable could be excluded. The other rulings are so manifestly correct that it would only lengthen this opinion to discuss them.

The judgment is affirmed.

Chipman, P. J., and Buckles, J., concurred.

A petition to have the cause heard by the supreme court after judgment in the district court of appeal was denied by the supreme court on July 25, 1905.