[Civ. No. 4065. Third Appellate District.—May 1, 1930.]

CHARLES C. CROSSIN, Appellant, v. ELYSIAN SPRINGS WATER COMPANY (a Corporation), Respondent.

Rohe & Freston for Appellant.

Rollin L. McNitt for Respondent.

PLUMMER, J.—This is an appeal by the plaintiff from a judgment entered in favor of the defendants after sustain-

ing a demurrer interposed to plaintiff's second amended complaint. The second amended complaint, omitting matters not necessary to mention, alleged that in the month of July, 1922, plaintiff, in an interview with officers of the company, offered to purchase from one Clary all of the business, patronage and goodwill of Clary in certain territory wherein said Clary had been delivering water bottled by the defendant; that the defendant, through its officers and agents, advised the plaintiff of a better proposition, to wit, that one C. Floyd Kinne, who was operating in the Hollywood territory of Los Angeles, desired to cease operating and would sell the goodwill and business and delivery truck for the sum of $2,500; that on or about the eighteenth day of August, 1922, the plaintiff agreed with Kinne to purchase from Kinne the customers' goodwill and patronage of said route and truck of said Kinne for the sum of $2,500. Plaintiff thereupon communicated to defendant the information that he and Kinne had reached an agreement, and on August 19, 1922, at the special instance and request of the defendant's officers, the plaintiff repaired to the business establishment of defendant and entered into a contract, a copy of which was annexed to the complaint, marked "Exhibit A," and that at said time the plaintiff paid to Kinne the sum of $2,500; that at said time Kinne was serving approximately 250 customers on the Hollywood route and 165 customers outside, referred to as the "West Adams District." The complaint further sets forth that the plaintiff continued to conduct the business of said route and operate the same and continued to deliver water bottled by the defendant up to and until the seventh day of October, 1925, when the defendant refused to further continue the supplying of the plaintiff with water and further refused to recognize the right of the plaintiff to deliver water over said route. The complaint further alleges that the contract between the defendant and Kinne, entered into on the twenty-seventh day of March, 1922, provided that if at any time within four months thereafter said Kinne desired to withdraw therefrom, the defendant would pay to the plaintiff the sum of $2,500, and that the sum of $2,500 paid by the plaintiff to Kinne for the route over which said Kinne had theretofore delivered water, and for the truck and equipment, was really paid for the uses and purposes of the defendant. The complaint fur-

ther alleges that the plaintiff had succeeded in building up the route from 250 customers to 600, so that the gross receipts from the route had been increased from $250 per month to approximately $900 per month, and the net receipts from $125 per month to approximately $300 per month. The complaint further alleges that by reason of the cancellation of the contract on the part of the defendant, the plaintiff had been damaged in the sum of $10,500.

The agreement attached to the second amended complaint as "Exhibit A," entered into between the plaintiff's assignor and the defendant, contained the following stipulations material to be considered (we quote the language of the agreement): "This agreement made on the 27th day of March, 1922, between the Elysian Springs Water and Bottling Company, hereinafter known as the 'Company,' and Floyd C. Kinne, hereinafter known as the 'distributor.' The Company desires to have their Spring water and carbonated beverages sold and distributed in certain territory hereinafter described. The distributor desires to have the exclusive right to that privilege. In consideration of $1.00, the receipt whereof is hereby acknowledged, and other valuable considerations, the Company agrees to give the distributor the exclusive right to sell and distribute Elysian Springs water and carbonated beverages in that certain territory in the City of Los Angeles hereinafter described. The agreement to continue for one year from date, subject to requirements hereinafter enumerated, and to continue in force thereafter so long as the distributor shall faithfully perform the terms of this agreement." The agreement further provided that the distributor should furnish motor-trucks of sufficient capacity to promptly deliver and distribute water to the different customers. Provision is then made in the contract as to the prices at which the water shall be delivered to the distributor and the prices to be charged the customers. Statements of account to customers were to be made in the name of the company, and remittances for the same, direct to the company, the company agreeing to keep accurate records of all receipts from distributor's customers, crediting the same to the distributor. The distributor agreed to devote his entire time exclusively to the business of distributing the products of the company. The agreement contained the following paragraph: "The Company agrees, if

four months from date the distributor wishes on that date to give up this contract, the Company will, within reasonable time, dispose of the route and return to the distributor the amount he has paid for route and traffic truck, the truck to be turned over in good condition, allowing for reasonable wear.'' The agreement further provided that the ownership of the route was to remain with the company, as well as all records, lists, etc., pertaining thereto, which were to be made and kept by the distributor.

Whatever rights Kinne had under this contract and the truck or trucks and equipment owned by Kinne, and used by him in the distribution of water, was sold and delivered to the plaintiff in this action. While the second amended complaint does not set out the agreement dated August 19, 1922, entered into between the plaintiff and the defendant relative to the distribution of water, the transcript does contain the same, and it is identical in language in all material particulars, with the agreement from which we have been quoting.

It thus appears from the pleadings that the plaintiff had been acting as a distributor for the defendant's products, from some time during the month of August, 1922, until about the 7th of October, 1925, a period of about three years. and two and one-half months.

The complaint further alleges that the plaintiff misunderstood to some extent the property he was buying, in that it was the understanding of the plaintiff that he was to become the owner of the route, the customers, etc. There is nothing in the complaint, however, showing that the plaintiff was misled by any statement of the defendant, or that anything was said or done preventing a full or complete understanding, on the part of the plaintiff, of the agreement which was signed, or of the terms and conditions of the agreement between the plaintiff's assignor and the defendant. ▪ The argument of the plaintiff on this appeal appears to be all made upon the theory that the agreement entered into between the parties constituted an employment from year to year, and that the defendant had no right to cancel the agreement or terminate the relationship existing between the plaintiff and defendant, during the course of the year, but only at the end thereof. This argument is based upon the provisions of section 2012 of the Civil Code, which reads:

"Where, after the expiration of an agreement, respecting the wages and the term of service, the parties continue the relationship of master and servant, they are presumed to have renewed the agreement for the same wages and term of service." A sufficient answer to this contention is the fact that the contract referred to, or contracts involved herein, do not create the relationship of master and servant, but the relationship of principal and agent. While the plaintiff in this case was to perform certain services, he was in no sense the servant of the defendant; he was the agent of the Company for the purpose of distributing its products. The plaintiff was not paid wages in the usual understanding of that term. His compensation depended upon his skill and ability to build up the route, where he had the privilege of distributing the products furnished by the defendant. ■ Arguing, also, that the plaintiff was an agent of the defendant, it is insisted that it was an agency coupled with an interest, and that as the plaintiff had paid a valuable consideration, the defendant had no right to terminate the relationship. Section 2356 of the Civil Code reads: "Unless the power of an agent is coupled with an interest in the subject of the agency, it is terminated as to every person having notice thereof by—1. Its revocation by the principal. 2. His death; or 3. His incapacity to contract." While many authorities might be cited, it is only necessary to refer to 2 C. J. 532, section 155, second paragraph, showing that the relationship of principal and agent between the defendant and the plaintiff did not constitute an agency wherein the plaintiff had such an interest in the property or subject of the agency as to bring it within the exception specified in the section of the code above quoted. The language of the text in 2 Corpus Juris is as follows: "To bring a case within this exception it is necessary: (1) That the power and the interest should be coupled or united in point of time; that they should coexist. Hence the interest must exist in the subject matter of the power, and not merely in that which is produced by an exercise of the power, for if the agent's interest exists only in the proceeds arising from an execution of the power, the power and the interest are not coupled in point of time, since the power, in order to produce the interest, must be exercised, and by its exercise it is extinguished; the interest does not come into being until the power is gone. (2) That

the power and the interest should be coupled with reference to their subject matter. They must exist with reference to the same thing. For this reason also it is necessary that the agent's interest should exist in the subject matter of the power, and not merely in that which is produced by an exercise of the power. (3) That the power and the interest should be coupled with reference to the persons in whom they are vested. They must be united in the same person. (4) That the power and the interest should be coupled with reference to their source. They must be derived by the agent from the same person, although it is not necessary that they should be conferred by the same writing if they are conferred contemporaneously as one entire transaction.''

A reference to the terms of the contract constituting the agency which we have set forth herein shows that the interest of the agent was in the proceeds arising from the exercise of the power or the privilege conferred. The power or privilege conferred being to act as distributor, and the remuneration or interest which the agent owned or was to receive, came from, and was a part of the proceeds derived from the distribution of the water products furnished by the company, and constituted, in the language of the section, ''the proceeds arising from the exercise of the power.''

A further reference to the contract shows that the time of continuance specified therein was one year, after which it would be a relationship existing at the will of the parties. The transcript shows that by stipulation, the agreement entered into between the defendant and the plaintiff was to be considered as a part of the plaintiff's second amended complaint; the time of the contract to continue, or the time during which the relationship of principal and agent should continue reads as follows: ''The exclusive right to sell and distribute Elysian Springs Water and carbonated beverages in that certain territory hereinafter described, for the period of one year, or such time as the distributor shall faithfully comply with the requirements herein enumerated.'' This provision can only be read as particularly providing that the relationship shall exist for the period of one year, and thereafter, during the will of the parties. Unless so read it would be a contract providing for a relationship to exist

in perpetuity, something which the law abhors. (*Echols* v. *New Orleans etc. R. R. Co.*, 52 Miss. 610.)

 The contract entered into between the parties contains no provision limiting revocation and dissolution of the relationship, save and except the one-year period. Thus, the rule set forth in 1 California Jurisprudence, page 702, section 11, applies. We quote from the text: "It is the general rule that any agency, unless coupled with an interest, is revocable at any time as between the principal and the agent, at the mere pleasure of the principal, in so far as it relates to things concerning which the agency has not been executed. This principle is recognized in section 2356 of the Civil Code." We do not need to quote the whole of the section, but the rule therein stated and the authorities cited show clearly the right of the principal to revoke an agency, unless limited by the terms of the contract creating the agency, which does not exist in this case, as more than the time limit had expired; in fact, three times the period limited had expired before the agency was revoked.

 The facts set forth in the plaintiff's complaint show that if the authorities relative to the revocation of an agency such as existed in this case, which hold that the agent must be given a reasonable time within which to recoup his expenditures, etc., apply, yet a cause of action has not been stated based upon the holding in such cases, because by the terms of the pleading plaintiff has had such time, and has pleaded facts showing that he has more than recouped his expenses and made a substantial profit. This rule, however, was expressly denied application in the case of *Boehn* v. *Spreckels*, 183 Cal. 239 [191 Pac. 5]. Having fixed one year for the duration of the contract, it must be held that the contracting parties considered the same a reasonable time, and in view of the facts which we have just stated relative to the time when the relationship did exist, and the fact that the plaintiff had more than recouped his expenses and realized a profit, the fact that the agency yielded a greater return at the expiration of its existence than at its inception, is not a material matter for our consideration.

While other cases might be cited, two cases decided by the Supreme Court are determinative of the questions involved in this action. In the case of *Boehm* v. *Spreckels, supra,* and *Otten* v. *Spreckels,* 183 Cal. 252 [191 Pac. 11], con-

tracts relative to the distribution of paper and the control and ownership of paper routes, almost identical with the contract in this case, were involved. In the Spreckels cases, consideration had been paid for the privilege of distributing papers over the routes involved. The papers were delivered to the distributors at so much per paper, to be sold by the distributor to patrons at the price fixed by Spreckels, or rather, by the Call Publishing Company. The distributors received their compensation out of the proceeds of the distribution and sale of the papers to the customers. The routes belonged to the Call Publishing Company, called ''Spreckels'' in the opinions in the two cases referred to. Here, the circumstances are exactly the same. The bottled products were delivered by the defendant to the plaintiff at a certain price; the plaintiff was to distribute the bottled products over a route belonging to the defendant and to the defendant's customers, delivering the same to them at a certain fixed price named by the company, and out of the proceeds received his compensation. It was held in both of the Spreckels cases that the contract or relationship of principal and agent was terminable at will, and that no cause of action existed on the part of either plaintiff in the way of damages. We do not need to quote from the language of the cases, a reference to them being all that is necessary.

■ Appellant seeks to distinguish the Spreckels cases from the case at bar by making the contention that the agency here was coupled with an interest. We think this attempted distinction is not tenable, and that the case at bar does not present any circumstances preventing the holding of those cases being determinative of the issues here involved. The giving of a consideration for the assignment of the agent's contract, or the assignment of Kinne's contract to the plaintiff, is not such a consideration as would make the agency irrevocable. (2 Cor. Jur. 536.) At least, the irrevocability of the agency would exist only for the period of its specified duration, to wit, one year. We think that during that period the agency would not be irrevocable, but if revoked without cause, liability for damages arising therefrom would only be incurred. (*Myer* v. *Pulitzer Publishing Co.*, 156 Mo. App. 170 [136 S. W. 5]; *Staroske* v. *Pulitzer Publishing Co.*, 235 Mo. 67 [138 S. W. 36].)

Other cases might be cited, but we think the two Spreckels cases heretofore referred to are decisive.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.