[Sac. No. 4754. In Bank.—March 1, 1934.]

CAPITAL NATIONAL BANK OF SACRAMENTO (a Corporation), as Guardian, etc., et al., Respondents, v. EDWIN P. STOLL, etc., et al., Appellants.

Howe, Hibbitt & Johnston and White, Miller, Needham, Harber & Mering for Appellants.

Inman & West, Sheridan Downey, Morgan V. Spicer and Ralph H. Lewis for Respondents.

THE COURT.—We hereby adopt the following portions of our former opinion as a statement of the facts and issues presented in this case:

"This appeal is from a judgment in favor of plaintiffs declaring that a contract employing the defendant Edwin P. Stoll was terminated by the incompetency of his father and employer, John T. Stoll, and restraining the defendant Edwin P. Stoll from interfering with the possession of the property or its management by the guardian. The facts necessary to understand the controversy are few and free from complications. All the defendants are sons of John T. Stoll, one of the plaintiffs. The plaintiff Jennie T. Stoll is his wife and the stepmother of the defendants. We do not include the bank as a plaintiff for reasons hereinafter to be stated.

"For more than eight years before October 26, 1929, Edwin P. Stoll had been employed by the Remington Arms Company, and on the date mentioned, and for about four years prior thereto, was manager of its western cutlery division at a salary of $350 per month, together with his traveling and other necessary expenses when away from his home. His prospects with that company were very good and the opportunity for further advancement excellent. He saw his father rather frequently at the latter's home in Sacramento—probably four or five times a year. For some time prior to 1929 his father had desired him to give up his employment with the Remington Arms Company and take over the management of his father's affairs. The son had put his father off. Finally, in June of that year he received a letter from his stepmother as follows: 'Your father wishes me to write you that he is not able to write, let alone go down to Oakland, and he would like to have you come up.' In response he went to Sacramento, where his father, then eighty-seven years of age, insisted that he could no longer put him off, else he would have to make other arrangements. Edwin P. Stoll told his father that he would assume the burden if he could be protected in the term of his employment and his interest in the estate; which employment should continue until the decree of distribution was signed. After consulting with his father's counsel, and after three different drafts of an agreement were submitted, the following contract was signed:

" 'This agreement, made and entered into this 26th day of October, 1929, by and between E. P. Stoll, of San Francisco, California, party of the first part, and John T. Stoll, of Sacramento, California, the party of the second part.

" 'Witnesseth: That the parties hereto are father and son:

" 'That the party of the second part being advanced in years desires the services of the first party to manage his business and properties during the remainder of his life, and thereafter until final distribution of the estate of said second party has been made, upon the terms and conditions hereinafter set forth;

" 'That said first party is now employed at a salary of $350 per month, and his interests are such that he cannot afford to relinquish said position without assurance of such employment as is herein provided, and this agreement is, therefore, predicated upon such relinquishment of employ-

ment by said first party and his employment, as herein set out, by said second party.

"'That in consideration of the foregoing said second party agrees to employ, and said first party agrees to accept, such employment for a period of time commencing upon the 1st day of December, 1929, and ending with the final distribution of the estate of the second party, as above set forth, at a monthly salary of $350, payable monthly.

"'That in consideration of the foregoing, first party agrees to devote his entire time and his best ability to the management, control and operation of the business and property of said second party during said term.

"'That in further consideration of first party surrendering his said position said party of the second part agrees to take no action whatsoever that will in any manner reduce the share of the estate of said second party to which first party shall or would be entitled as an heir at law.'"

"Edwin P. Stoll entered upon his employment as agreed and continued therein for two years. On December 2, 1931, his father was adjudged incompetent and the Capital National Bank was appointed guardian of his estate. On January 8, 1932, this action was commenced to have it declared that the contract was terminated and to restrain Edwin P. Stoll from interfering with the possession or management by the guardian of the property of his father. The first complaint was brought by the bank as guardian, but an amended complaint was filed wherein John T. Stoll appeared by the bank, the wife electing to join with the plaintiff, and the other sons with the defendant. The property consisted of three hotels, stores for thirteen or fourteen tenants, three ranches, and notes, etc., aggregating in value at the time of the contract $350,000 or more, with a monthly income of $1,800 or $2,000. Further, it was stipulated that Edwin P. Stoll performed the terms of his contract, and that there was no objection to his conduct of the position.

"Various contentions are advanced by appellants. They complain that the action was commenced by the bank as guardian, but of necessity their argument in this particular must be accorded no further consideration in view of the amendment of the complaint to conform to the recognized procedure. Their other propositions may be included in the general problem of whether in the particular contract the power of the appellant Edwin P. Stoll

was coupled with an interest so as to prevent the termination of the contract by virtue of the provisions of section 2356 of the Civil Code, which reads: 'Unless the power of an agent is coupled with an interest in the subject of the agency, it is terminated, as to any person having notice thereof, by:

" '1. Its revocation by the principal;

" '2. His death; or

" '3. His incapacity to contract.'

"We have an unusual situation — a son sacrificing his employment and chances of further preferment in order to manage an aged father's estate upon the assurance that his employment shall continue until he receives his interest therein, which, it is agreed, shall not by any act of the father be reduced below that which he would take if his father were to die intestate. . . . We should have no hesitancy at all in declaring under the circumstances of the case, if John T. Stoll, possessed of all his faculties, were attempting to revoke the employment of his son under subdivision 1 of the above-quoted section that . . . he would be answerable in damages for such a breach. (*Parke* v. *Frank,* 75 Cal. 364–368 [17 Pac. 427]; *Roth* v. *Moeller,* 185 Cal. 415–418 [197 Pac. 62].) Nor can it be seriously questioned that in the event of his father's demise and the fulfillment of his part of the contract by Edwin P. Stoll he would be able to receive his share of the estate under the contract. (*Rogers* v. *Schlotterback,* 167 Cal. 35 [138 Pac. 728]; *Roy* v. *Pos,* 183 Cal. 359–367 [191 Pac. 542].)" These observations do not, however, solve our present problem.

■ The general rule that an agency is always revocable, and is revoked by operation of law in the event of death or incapacity of the principal, is subject only to the exception that an agency or power *coupled with an interest* is not so terminated. What constitutes an interest within the meaning of this exception has not been made particularly clear by the numerous and conflicting decisions dealing with the subject. ■ But all the decisions agree that an essential element of this irrevocable power must be a coexisting interest in the subject of the agency. In *Lane Mortgage Co.* v. *Crenshaw,* 93 Cal. App. 411 [269 Pac. 672], the agency was to manage a hotel, and the agent had a twenty-year lease of one floor, without rent. It was held that the

agency was coupled with an interest—a present leasehold estate in the property which was the subject of the agency. The power was, moreover, a necessary means of protecting the interest, for unless the building were properly managed, a forfeiture of the basic land lease might result, which would destroy the agent's estate.

On the other hand, where no specific, present property interest has been found, the courts have consistently held the agency revocable, notwithstanding the fact that the agent gave valuable consideration, and in spite of express declarations in the contract that it was coupled with an interest and irrevocable. (*Boehm* v. *Spreckels,* 183 Cal. 239 [191 Pac. 5]; *Crossin* v. *Elysian Springs Water Co.,* 105 Cal. App. 449 [287 Pac. 985]; *Scott* v. *Superior Court,* 205 Cal. 525 [271 Pac. 906]; *Todd* v. *Superior Court,* 181 Cal. 406 [184 Pac. 684, 7 A. L. R. 938]; *Kunz* v. *Anglo & London Paris Nat. Bank,* (1931) 214 Cal. 341 [5 Pac. (2d) 417]; *McColgan* v. *Bank of California,* 208 Cal. 329 [281 Pac. 381, 65 A. L. R. 1075].)

 In the instant case it seems clear that despite the obvious detriment suffered and benefit conferred by the defendant, no present property interest passed to him by the agreement. He was promised two things. The first was a salary of $350 per month. This was, of course, not an interest in the estate. Secondly, it was agreed that his father would not reduce the amount of his expected inheritance. Here again, no present interest in the property passed, but by the very language of the promise, he was to get the interest only upon his becoming an heir, that is, upon his father's death. At most, this was an agreement to leave property by will or by intestacy. The case of *O'Brien* v. *O'Brien,* 197 Cal. 577 [241 Pac. 861], where the defendant gave up a medical practice to manage plaintiff's property, and plaintiff agreed to devise certain land to him, points out that the remedy in such a case is an action for damages. (See, also, *O'Brien* v. *Perry,* 130 Cal. 526 [62 Pac. 927]; *In re Hayden's Estate,* 1 Cal. App. 75 [81 Pac. 668].)

Such cases as *Bridge* v. *Kedon,* 163 Cal. 493 [126 Pac. 149, 43 L. R. A. (N. S.) 404], are not controlling here. In that case the defendant made an *assignment* to plaintiff of his expectant interest in the estate of his mother. The

court held that the assignment created a "present equitable charge", enforceable as a contract to assign when the property came into the hands of the heir. The court recognized, however, that the right of plaintiff was purely contractual, and that prior to the death of defendant's mother, no property interest passed.

Plaintiffs also urge two other serious objections to holding this agreement irrevocable. Because of the conclusion we have reached as to the character of the agency, we do not deem it necessary to decide them.

It follows from the authorities considered that this case does not fall within the rare class of irrevocable agencies, and that the judgment of the court below, in so far as it terminates the *agency,* is correct. Whatever right the agent may have to recover damages or to protect his expectant interest in the estate is not involved in this action. We think, however, that the court was in error in declaring the *contract* terminated. The contract not only provides for the employment of defendant as agent, but also contains the agreement not to reduce his expectant share of the estate. If the consideration is adequate and the contract otherwise fair and reasonable, and the defendant is willing to perform and has not been guilty of any improper performance, we see no reason why this part of the agreement may not be valid and subsisting, and binding on the estate of the incompetent. As far as the record shows, defendant may pursue either or both remedies. But since the case has been tried and appealed on the issue of whether the agency was irrevocable, and no pleading or proof of other matters was presented, they must be made the basis of a separate action.

The judgment is modified by striking therefrom the words "said contract", and substituting therefor the words "the employment of Edwin P. Stoll", and as so modified, it is affirmed.

Thompson, J., dissented.

Rehearing denied.