[L. A. No. 1301.　In Bank.—August 10, 1905.]

## ROBERT F. BELL, Appellant, v. ANNIE E. WYMAN et al., Respondents.

ACTION TO QUIET TITLE—HUSBAND AND WIFE—DEVISE TO WIFE—SEPARATE PROPERTY—DECLARATION IN WILL—CONSTRUCTION OF LAW.—Property devised to the wife is her separate property. In an action by an assignee of the husband to quiet title to an interest in land devised to the wife, as being community property earned by the services of the wife, where it appears to be declared in the will that the devise was not intended as a payment for services, but from a desire to give the devisee the preference, no strained construction of the law should be made to defeat the intent expressed in the will.

ID.—NONSUIT PROPERLY GRANTED—CONSTRUCTION OF EVIDENCE.—*Held*, that the evidence for the plaintiff cannot be reasonably construed as showing an intention of the testator other than that expressed in the will, and that it shows that defendant's title rests upon devise, and that defendant's motion for a nonsuit was properly granted. [Beatty, C. J., Henshaw, J., and Lorigan, J., dissenting.]

APPEAL from a judgment of the Superior Court of Santa Barbara County. W. S. Day, Judge.

The main facts are stated in the opinion rendered in Department Two, affirmed by the court in Bank. Further facts are stated in the dissenting opinion of Beatty, C. J.

Canfield & Starbuck, for Appellant.

Charles U. Armstrong, for Respondents.

THE COURT.—Upon further consideration of this case upon rehearing we adhere to the views expressed in the opinion heretofore rendered in Department Two. For the reasons therein given the judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.

VAN DYKE, J.—I concur in the judgment of affirmance not so much from what is said in the Department opinion as from the fact that the title to the real estate in question

became vested in Mrs. Wyman by the devise, and the constitution in direct terms declares that in such case it is the separate property of the devisee.

McFARLAND, J.—I concur in the judgment of affirmance upon the views expressed in the opinion delivered in Department. I also think that the judgment is right upon the further ground that the land in controversy is the separate property of the defendant Mrs. Wyman, because she acquired it by "devise," and under the state constitution all property acquired by devise is separate property, no matter what motive may have moved the testator to make the devise.

BEATTY, C. J., dissenting.—I dissent.

It is the settled doctrine of this court that a man may bind himself by a contract, written or oral, to make a particular disposition of his property by will, and that such contract may be specifically enforced in favor of the promisee. (*Owens* v. *McNally*, 113 Cal. 444, [45 Pac. 710]; *McCabe* v. *Healy*, 138 Cal. 81, [70 Pac. 1008].)

In this case the plaintiff, claiming that David Brown made such a promise and fulfilled it by devising the land in Santa Barbara to Mrs. Wyman, undertook to maintain the legal proposition that property passing by such a devise to a husband or wife becomes community property alienable by the husband, and this for the reason that the constitution (art. XX, sec. 8) and the statute (Civ. Code, secs. 162, 163), which declare that all property acquired by either spouse during coverture, by gift, bequest, or devise, is his or her separate property, ought not to be construed as embracing property passing under the form of bequest or devise when such provision was obligatory upon the testator, and made in requital of the personal services of the devisee or legatee. In support of this proposition they relied upon the principle underlying the distinction between separate and community property in the civil law, the source from which our law was taken—viz., that property earned by the services of either spouse should belong to the community, while property acquired gratuitously by either should belong exclusively to the donee. Upon this principle they contended that the word "devise," being generally defined as a *gift* of real property by will, and dis-

positions by will being with rare exceptions entirely volun-
tary, was used in that restricted sense in the constitution and
in the code, and should be so construed as to exclude a devise
which has been earned by the personal services of wife or
husband—services substracted from the community, and
therefore a devise which merely pays a debt due to the com-
munity. To this argument upon the principal question of
law involved in the appeal from the judgment of nonsuit it
is not too much to say that the brief of respondent contains
no answer. No notice of it was taken in the opinion of the
department, because there the judgment of the superior court
was sustained upon the ground that there was "no evidence
even tending to show a contract in any way relating to the
land in question." That decision was set aside and a rehear-
ing granted because it was considered by those concurring in
the order that there was evidence directly tending to prove
the disputed fact, and because in view of such evidence it
became necessary to decide the question of law. It is a some-
what singular outcome of the order for a rehearing that the
case is finally disposed of by the court in Bank without a
decision of either of the two questions involved in its deter-
mination. Two justices are satisfied to adhere to the views of
the Department—that there was a total failure of evidence
as to the existence of a contract. One places his affirmance
upon the sole ground that a devise, whether voluntary or
obligatory,—whether a gift or the payment of a debt due for
the personal services of a husband or wife,—constitutes the
land the separate property of the devisee, and one places his
conclusion on both grounds. The case is thus disposed of,
but nothing is decided. I have stated the substance of the
argument against the literal construction given to the word
"devise" by Justice Van Dyke, but I have by no means stated
the argument in its fullness and force. If there is an answer
to it, I think it merits an answer, and certainly it is not an-
swered by simply saying a devise is a devise. When the
question arose whether a street or suburban railroad char-
tered by local authority was a railroad within the meaning
of those clauses of the constitution relating to the fixing of
rates and the mode of assessment for the purpose of taxation,
it was not thought a sufficient answer to say a railroad is a
railroad. On the contrary, it was held that although rail-

roads in a general sense, street railroads and suburban railroads chartered by cities or counties are not the railroads contemplated by those provisions of the constitution. And so in a great number and variety of instances this court and other courts have placed a narrower or more liberal construction upon constitutional and statutory provisions than their literal terms would justify, and this upon considerations in nowise different from those urged by the appellant against the literal construction of the provision in question here. Allowing any weight to the principle of discrimination plainly evident in the terms of the constitution and consistently enforced by the commentators upon this feature of the civil law, it would certainly be permissible to hold that a devise made in fulfillment of a contract for the personal services of a married woman in nursing and caring for an infirm and helpless old man during the last years of his life is not the devise contemplated by a clause of the constitution,— where it is coupled with other modes of transfer always gratuitous in the case of gift and descent,—and, with rare exceptions, equally gratuitous in cases of bequest or devise. According to the rule *"noscitur a sociis,"* only gratuitous bequests and devises are meant.

But it is not with this question of construction that I am so particularly concerned. It is not decided, and may never call for a decision. I take sharper issue with the adhesion of Justices Shaw, Angellotti, and McFarland to what was held in Department,—viz., that there was no evidence "even tending to show a contract in any way relating to the land in question." There was, in my opinion, not only some substantial evidence tending to prove such a contract, but there was evidence very direct and very convincing to that effect. The opinion delivered in Department gives the general features of the case, but entirely fails to state the most important and direct evidence bearing upon this point. It quotes from the will a declaration to the effect that it is made without the knowledge of Mrs. Wyman, and not as a payment of her services, but merely because of the testator's desire that she should have the property in preference to his distant relatives. It does not notice the statements contained in Mrs. Wyman's letter commenced on the 12th of August and finished on the 14th, in which she explains that the visit of

herself and Uncle Davie to Santa Maria for the purpose of having his will drawn and executed is being postponed ·from day to day on account of his illness, and in which she says: ''He is going to make his will tomorrow he has bin talking to me a long time this morning telling ·me what to do and how to get along and what he wants done with his things his mules I have to keep as long as they live on this ranch they are down on John Rices place now on pasture he said Again this morning that he was going to leave me everything he had in the world.'' This is especially significant. The will was made on the 18th of August, and contains a clause providing for the mules. This not only shows the falsity of the declaration that the devise of everything to her was without her knowledge, but it shows that she was fully informed as to the details of the provisions of the will in other respects, and this false declaration is coupled with a statement of his motive in making the will equally opposed to Mrs. Wyman's repeated statements in her letters to her husband to the effect that he had promised to give her everything, the evident design being to defeat any claim on the part of the husband from whom she sought a divorce as soon as the property was distributed to her. Another item of *conflicting* evidence not entitled to be considered on a motion for a nonsuit, but to which an undue significance is accorded in the Department opinion, is the refusal of Mrs. Wyman to ask for a promise in writing. Her whole letter, from which a few lines are quoted, and the whole correspondence show that the reason why she refused to ask for a written promise was because she was afraid of alarming Uncle Davie's suspicions by asking for a writing, and thought it more prudent to trust to his fulfillment of his repeated oral promises—a point in which her judgment was vindicated by the result. Another significant passage from a letter of May 23d is the following in reference to this particular land: ''uncle Davie is going to build A new house and dig an artision well and fix up thing down their and we are going to go down their to live that is the way he is talking now he sais he wants to fix up A good home for me when he is gon so I will not have to work out any more he is going to have everything fine now I tell you; if he lives long enough to fix it up for me and he sais if he dont live to fix it up he wants me to carrie out his plans so he can see me working at

it when he is in the spirit life and I tell him all rite I will do it.'' Writing July 16th she says: "you know that he told me just yesterday that when we get down their in our own house and get in the fall rent which will come in November then he is going to fix up his business and he is going to will me everything he has in the world.'' In the same letter she tells of the burning of a former will and proceeds: "now he will make one to me some of these days before long he told me so yesterday and wyman my Dear if can get that then you nor me will not have to work so hard any more nor we will not have to be apart we can live where we please we will have an income that will support us and more to.'' Again, referring to this land, she says: "uncle Davie says he will Be Redy to die when we get down their in the new house get the well dug and the duck pond full of water get me all fixed to live then he will want to die and get out of my way.''

But it is not to these or any number of isolated expressions gathered from her letters that attention should be confined—persuasive as they are as to the fact that Uncle Davie had promised to leave her all his property generally and this ranch in particular, in consideration of her services. The whole tenor of the correspondence, and the circumstances, including the making of the will, all tend to show that there was a contract based upon a sufficient consideration, that such a will should be made. The order granting a nonsuit cannot be sustained upon the ground that there was no evidence of a contract relating to this land, and there is greater reason to suppose it was in fact based upon Justice Van Dyke's construction of the constitution and code in their definition of separate property.

Henshaw, J., and Lorigan, J., concurred in the dissenting opinion.

The following is the opinion rendered in Department Two February 2, 1905, affirmed by the court in Bank:

GRAY, C.—This action is brought to quiet title to a one-fourth interest in a tract of land consisting of some three hundred and five acres, situated in Santa Barbara County. Plaintiff claims title to this one-fourth interest as successor to William Wyman through several conveyances.

The claim of plaintiff is, that the tract of land was the

community property of said Wyman and his wife. The said wife, and defendant herein, Annie Wyman, claims the tract as her separate property. The defendant William Wyman filed a disclaimer in the case. The defendants Wineman and the Bank of Santa Maria hold mortgages executed by Annie Wyman on the property. At the conclusion of plaintiff's evidence the court, on motion of the defendant, granted a nonsuit and dismissed the case because of failure of plaintiff's proof. The plaintiff appeals from the judgment which followed, and his contention is, that the evidence introduced by him showed that the property was acquired by Mrs. Wyman under such circumstances as to make it community property. To this we cannot agree.

The evidence on this subject consisted of twenty-six letters written by Mrs. Wyman from Santa Barbara County to her husband in the state of Washington, together with the recitals of a will hereinafter referred to. These letters show that Mrs. Wyman left her husband on a piece of government land in Washington and came to Santa Barbara, where they had formerly lived, and where her father, mother, and other relatives were then living. That for some months after she came to Santa Barbara County from time to time she sent her husband small sums of money out of her earnings. Some seven months after she arrived at Santa Barbara County she opened a restaurant, and had as one of her boarders a bachelor some ninety-five years of age named David Brown, usually known as "Uncle Davie." This old man was a cripple and so nearly helpless that, in addition to fifteen dollars for his board, he paid Mrs. Wyman twenty dollars a month to take care of him. From the beginning of her services to Uncle Davie, Mrs. Wyman's purpose was to "get around him," as she expresses it, and by condoning his fits of ill-humor and being pleasant to him finally succeed in inducing him to make a will in her favor devising all his property to her. The restaurant business did not pay, and with the assistance of Uncle Davie Mrs. Wyman, after some four or five months, paid the debts that had accumulated and quit the business. Thereafter Mrs. Wyman continued with Uncle Davie, and the latter came to have a high regard for her, and promised her that if she would stay with him to the end he would see that she did not want for anything when he was gone. How long Uncle Davie

continued to pay Mrs. Wyman the twenty dollars a month for "nursing" him, as he called it, the evidence does not disclose. Mrs. Wyman continued with Uncle Davie to the time of his death, some two years after she quit the restaurant business. From the first Wyman was very much averse to his wife remaining with Uncle Davie, and kept writing her to come to him in Washington. She informed him fully as to her relations with Uncle Davie and of her hopes in regard to finally securing his property. In August, 1896, Uncle Davie made his will, devising and bequeathing most of his property, including the land here in question, to Mrs. Wyman.

The correspondence between Mr. Wyman and his wife seems to have ceased with a letter written by her, dated January 15, 1897. Brown's death occurred on May 27, 1898. The letters of Mrs. Wyman written after the will was made indicate that her husband had become reconciled to the situation and was making no further objections to his wife remaining with Brown. The services required of Mrs. Wyman in caring for Brown seem to have been of a very exacting nature. She was required to dress and undress him, to unfasten and fasten his clothes before and after his going to the closet, to attend and treat his sore eye, etc. Added to this, Brown was fretful and fault-finding, all of which Mrs. Wyman bore with patience.

Some two or three months after Brown's death Mrs. Wyman commenced a suit in Santa Barbara against her husband for a divorce, and it was in the employment of counsel and to defray expenses of a defense to that suit that Wyman parted with the alleged title to the one-quarter interest in the real estate involved in this action.

The will of Brown contains the following clause: "The said gift, bequest and devise to the said Annie E. Wyman of the large part of my estate is made without her knowledge, not as a payment for her care of me, but is made as my desire that she shall have it in preference to others, I having no near relatives, and as the highest mark of esteem that I can show her for the faithful care and attention she has given me in my old age."

On the death of Brown his will was duly probated and the three hundred and five acres of land involved was duly distributed to Mrs. Wyman by decree of the probate court.

Appellant contends that there was a contract between Mrs. Wyman and Brown and that the will was made in pursuance of the contract and in payment for services rendered, and that this contract might have been specifically enforced. No such construction can reasonably be placed on the evidence before us. Mrs. Wyman expressly declares in one of her letters, in reply to her husband's demand that she "have Uncle Davie to sign an agreement just what he will do" for her and send it to him in Washington, that "I will not ask anything of the kind of him. I am here and I know him better than to do anything of that sort." The intention of Mrs. Wyman was to procure a devise of this property to herself by last will, and not otherwise. It was also the intention of Brown, as clearly indicated in the language of the will above quoted, that Mrs. Wyman should have the property "not as a payment for her care of me," but as a mark of his esteem and because he had "no near relatives" and it was his desire that she should "have it in preference to others." No strained construction of the law should be allowed to defeat the intention of the parties so clearly shown.

Property acquired by the wife after marriage "by gift, bequest, devise, or descent . . . is her separate property." (Civ. Code, sec. 162.)

Community property is property acquired after marriage by either spouse in some manner other than by gift, bequest, devise, or descent. (Civ. Code, sec. 164.)

There was not any evidence even tending to show a contract in any way relating to the land in question. All the interest and title that Mrs. Wyman has in the property rests on the devise by will. The property was therefore not community property, but the separate property of Mrs. Wyman, and Wyman never had any interest in it to convey to any one. The nonsuit was properly granted.

We advise that the judgment be affirmed.

Cooper, C., and Smith, C., concurred.

Rehearing denied.