[Civ. No. 29512.   Second Dist., Div. Four.   Jan. 25, 1967.]

JULIUS RIGANTI et al., Plaintiffs and Respondents, v. MURIEL McELHINNEY, Defendant and Appellant.

O'Connor & Wood and August J. O'Connor for Plaintiffs and Respondents.

John W. Brooks and Don Edwin Raney for Defendant and Appellant.

FOX, J.*—This is an action for quasi-specific performance of an oral contract between plaintiffs and one James R. Trissel, now deceased, wherein plaintiffs agreed to look after his improved real property, collect the rents, and account to him for same and to care for said Trissel so long as he lived and

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

to show respect and obedience toward him as children toward a father. For this service, attention and care Trissel agreed plaintiffs should have free rent of the living quarters on his property that they then occupied and that on his death he would leave them a part of his property by his will. Although plaintiffs carried out their part of the agreement, decedent failed to provide for them in his will.

The court rendered judgment in favor of plaintiffs. Defendant, Muriel McElhinney, the residuary devisee and legatee under the will, has appealed.

The significance of the circumstances surrounding the agreement between plaintiffs and Trissel and the relationship between the parties during the six-year period between the making of the agreement and Trissel's death is of such importance that it seems desirable to have an accurate and comprehensive statement thereof. To that end we quote, in the footnote, the language from the findings of fact.[1]

---

[1] The court found:

"'. . . that on or about November 19, 1954, Julius and Dolores Riganti, his wife, entered into an oral agreement with James R. Trissel wherein and whereby the former agreed to live on the latter's above described real property, manage, maintain and supervise the said real property and the improvements thereon, to collect the rents from the tenants thereon, and to account therefor to James R. Trissel and to care for said James R. Trissel and to have respect and obedience toward him as children toward a father, and to carry out his directions with reference to the management and care of the said property and of his person as long as he lived, and in consideration therefor, James R. Trissel orally agreed to permit them the rent free use of their apartment and that he would give to Julius and Dolores by his Last Will and Testament a part of his improved real property where they were then living described as: Lot 4 of Block 188 of townsite of Redondo Beach, located at 623, 623-½, and 623-A South Catalina Avenue, Redondo Beach, California.

"'. . . that plaintiffs Julius and Dolores Riganti from November 19, 1954, to the date of death of James R. Trissel on November 25, 1960, in accordance with said oral agreement duly, diligently and faithfully performed the terms and provisions required of them to be done and performed under the terms and provisions of said oral agreement.

"'. . . that in September of 1949 when Julius and Dolores Riganti moved into and leased an apartment at 623 South Catalina Avenue, Redondo Beach, California, from James R. Trissel, decedent was approximately 57 years of age; he lived alone. He had a son and a daughter; the latter died in 1955 and his relations with the son were not friendly. They seldom communicated and on the occasions they did, arguments resulted. The decedent died leaving his son $500.00, payable $20.00 per month commencing six (6) months after the date of death. The decedent was not a strong or healthy man. In November 1954 he was hospitalized and underwent a serious lung and heart operation. From that time until the date of his death on November 25, 1960, he was not strong and was frequently confined to his bed. He was not able to pursue the work he had done in prior years because of his bad health.

"'Immediately prior to decedent's hospitalization in November of 1954, he gave plaintiffs his Power of Attorney to collect rents and manage the apartment units on his property. They visited him while he was in the

As a conclusion of law, the court declared that the plaintiffs are entitled to "quasi specific performance to avoid the perpetration of a fraud upon them and unjust enrichment of the devisee."

hospital and on one occasion, he told them that if they would continue to manage and care for his property and to care for him and treat him like a father, he would will the property to them. They told him they would do those things. Upon decedent's release from the hospital and he returned to the property, he was not strong and required continuous observation. In 1954 he was 62 years old and at the date of his death was approximately 68 years of age. The plaintiffs received their apartment rent free. Julius Riganti did repair work, maintenance work, built separate things for the decedent, installed electrical and plumbing devises [sic] and did services of that nature for which the free rent compensated. In addition to those services, Dolores Riganti prepared meals, and in a few instances bathed, shaved and fed the decedent. During the days when he was confined to his bed for a week or so at a time, she was always present and able to take care of his needs in his weakened condition. Both plaintiffs were always on the premises and immediately available to respond to decedent's needs. Julius Riganti during this period was offered a $2,000.00 deduction on the purchase of a home in San Fernando by his employer and a promotion in his employment which Julius Riganti refused because of his agreement with James R. Trissel. It is true that decedent acknowledged his agreement with plaintiffs and their filial relation and their faithful services rendered to him stating that Julius and Dolores Riganti were closer to him than the members of his own family had ever been, and stating that he was compensating the plaintiffs for their services by willing his real property where they were living to them upon his death. It is true that to his close friend he discussed his Will and stated his intention to will the real property to plaintiffs. Decedent consistently referred to plaintiffs as 'his kids' stating that they would be taken care of and that that side of the property where they lived would belong to plaintiffs. It is true plaintiffs relied upon decedent's agreement and his representations to will them the real property and continued to care for the property and his person during his lifetime. It is true decedent's property consisted of property known as Lots 4, 5 and 9. He occupied the cabin on Lot 9. William F. Czuleger, Mayor of Redondo Beach made an Affidavit in February of 1961 and recalled an incident in the Summer of 1960 when James R. Trissel offered him his real property for sale but stated that he would not include the third lot, Lot 4, which he owned as that was the one he intended to will to plaintiffs.

". . . that during the last six years of decedent's life, he was in bad health, his activities were limited; he was eratic [sic], eccentric and difficult to get along with. Plaintiffs stood by at all times and took care of him together with his property. During his illness and advanced age, such filial services they rendered were such that they could not be contracted for. The plaintiffs rendered such services and were faithful and loyal to decedent as dutiful children and suffered his irritations and inconsistencies of a person in his weakened condition. It is true that Julius Riganti had peculiar skills as a mechanic, carpenter and plasterer and could have improved his station in life by leaving his living quarters at 623 South Catalina and the performance of said oral contract with decedent but for his and his wife's obligation thereunder. It is true that plaintiffs performed the unique filial services pursuant to the oral agreement and are entitled to Lot 4 and its improvements."

As additional conclusions of law the court also declared:

1. That plaintiffs are the sole beneficial and equitable owners of that certain improved real property described as Lot 4.

2. That defendant holds the legal title of said last hereinabove described real property as constructive trustee for the sole use and benefit of plaintiffs and that she be required to execute a Grant Deed thereto and deliver the same to plaintiffs.

3. That the defendants have no right whatsoever in and to said real property or the rents, issues and profits therefrom.

The judgment decrees, *inter alia*, that plaintiffs have quasi-specific performance of an oral agreement with James R. Trissel; that plaintiffs are the sole and only beneficial and equitable owners of the improved real property here in question, and that defendant has no right, title, interest or estate whatsoever in and to said real property or the rents, issues and profits therefrom, and that she and her heirs, representatives, transferees, or assigns, and each of them, is permanently restrained and enjoined from claiming or asserting any right, title, interest, claim or estate whatsoever in, to or over said real property.

Defendant pled the statute of frauds as embodied in Code of Civil Procedure section 1973, subdivisions 1 and 6, and Civil Code section 1624, subdivisions 1 and 6.

■ This decision and judgment find solid judicial support in *McCabe* v. *Healy*, 138 Cal. 81 [70 P. 1008]. The guiding principles are stated on pages 84 and 85: "The principle of law invoked by this bill cannot be gainsaid, and it is well stated by Professor Pomeroy in his work on Specific Performance (p. 268), in this language: 'Courts of equity will, under special circumstances, enforce a contract to make a will, or to make a certain testamentary disposition; and this may be done, even when the agreement was parol, where in reliance upon the contract the promisee has changed his condition and relations so that a refusal to complete the agreement would be a fraud upon him. The relief is granted, not by ordering a will to be made, but by regarding the property in the hands of the heirs, devisees, assignees, or representatives of the deceased promisor, as impressed with a trust in favor of the plaintiff, and by compelling defendant, who must of course belong to some one of these classes of

persons, to make such a disposition of the property as will carry out the intent of the agreement.'

". . . It therefore follows in this case that if the deceased Matthew Healy, for an adequate consideration, agreed to leave a will upon his death, by its terms giving all of his estate to the plaintiff, and that he died without leaving such a will, and, if plaintiff cannot be placed in *statu quo,* and the failure of the deceased, Healy, to leave the will as agreed works a fraud upon plaintiff, and the granting of equitable relief to plaintiff would not work a gross injustice upon innocent third parties, then a court of equity will enforce Healy's agreement by declaring his heirs constructive trustees of the title cast upon them by reason of his dying intestate.''

▌ Defendant points out, however, that *McCabe* was decided in 1902, and that such an agreement was not then required to be in writing, and that in 1905 and 1907 our codes (Civ. Code, § 1624; Code Civ. Proc., § 1973—on which defendant relies) were amended to require such an agreement to be in writing in order to be enforcable. But even though the agreement is oral, sufficient facts may be shown to take the case out of the statute of frauds. The guiding principles in this respect are stated in *Walker* v. *Calloway,* 99 Cal.App.2d 675, 678 [222 P.2d 455]:

"Where a contract is within the statute of frauds, as it is here (Civ. Code, § 1624(6); Code Civ. Proc., § 1973(6)), the mere rendition of services is not usually such a part performance of a verbal agreement as will relieve the contract from the operation of the statute, but 'if the services are of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, and if the plaintiff, after the performance of the services, could not be restored to the situation in which he was before the rendition of the services, it is such a part performance of the verbal agreement as will remove the contract from the rule, and equity, where other objections are not present, will decree specific performance. But in such cases the reason for the interposition of equity is quite obvious. Plaintiff has rendered services of extraordinary and exceptional character, such service as in contemplation of the parties was not to be compensated for in money, and as in contemplation of law, cannot be compensated for in money; therefore, by no action at law could a plaintiff be restored to

his original position. It would be in the nature of a fraud upon him to deny him any relief, and, the law failing by reason of its universality, equity, to promote justice, makes good its imperfections. (Waterman on Specific Performance, § 41; Pomeroy's Specific Performance, § 114.)' (*Owens* v. *McNally*, 113 Cal. 444, 450 [45 P. 710, 33 L.R.A. 369]; *McCabe* v. *Healy*, 138 Cal. 81 [70 P. 1008]; Anno. 69 A.L.R. 14, 120, et seq.; 106 A.L.R. 742, 756, et seq.)''

Applying these principles to the facts as found by the trial court, we conclude the judgment must be affirmed.

▮ Plaintiffs had been living in Trissel's downstairs duplex at 623 South Catalina Avenue for a little more than five years when the oral agreement here in question was entered into. They had had ample time and opportunity to get well acquainted and had apparently developed confidence and respect for each other. Trissel was without immediate family except for a son with whom his relations were not friendly and with whom he seldom communicated. His health was not good and he faced surgery. He was then 62 years of age. In these circumstances Trissel no doubt felt alone in the world and in need of ''a family'' who would take an interest in him and look after his needs and welfare, and treat him like a father. It seems that over the next six years plaintiffs gave Trissel, who was in poor health, the care and attention he needed and wanted and served him as though they were members of his family, a fact which he recognized by referring to plaintiffs as ''his kids'' and stating to a friend that they were closer to him than the members of his own family had ever been. These services and this type of devotion (for the rest of Trissel's life) were of such a peculiar character that it was impossible to estimate their value by any pecuniary standard, and furthermore it is evident that the parties did not intend to measure them by any such standard for if they had so intended they could have fixed a fee therefor just as they had agreed that free rent would compensate for plaintiffs' taking care of Trissel's rental units, the collection of the rentals, et cetera. Having special skills as a mechanic and in certain trades of the building industry, Mr. Riganti could have improved his station in life by leaving Trissel's living accomodations and ''walking away'' from his and his wife's obligations under their agreement with Trissel. But they did not do that. They honored their commitment with Trissel. As a result, plaintiffs, after the performance of their services, could not be restored to the situation in which they

were before the rendition of the services. The failure therefore of Trissel to leave his will as agreed works a fraud upon plaintiffs and serves to remove the oral agreement from the statute of frauds. Equity then steps in, as it did in this case, and decrees what we call "quasi specific" performance "to avoid the perpetration of a fraud upon them [plaintiffs] and unjust enrichment of the devisee." Of course, equitable relief should not be granted where it would work a gross injustice upon innocent third parties (*McCabe* v. *Healy, supra,* 138 Cal. 81, at p. 85). No such problem is presented in the case at bench for the trial court drew the conclusion, *inter alia,* that plaintiffs were entitled to quasi-specific performance "to avoid . . . unjust enrichment of the devisee."

█ There is no merit in defendant's suggestion that plaintiffs failed to show that the consideration rendered by them was adequate. *Walker* v. *Galloway, supra,* 99 Cal.App. 2d 675, disposes of this suggestion. At page 682 the court stated: "Respondent claims that the short duration of plaintiff's services was inadequate as a consideration to sustain specific performance. It sufficiently appears that there was adequate consideration for the contract, for, as stated in *Velikanje* v. *Dickman, supra,* 98 Wash. 584 [168 P. 465, 470], in answer to a similar contention, '. . . the extent of the consideration is to be measured by the breadth of the undertaking rather than by the eventuality. Respondent might have had to serve and nurse for many years. Each party to the agreement knowingly stood the loss or gain by that contingency.' [Citations.]"

█ Defendant complains that the evidence does not sufficiently identify the property that Trissel was to leave plaintiffs in his will. It will be recalled that Trissel owned three lots—4, 5, and 9. Plaintiffs lived at 623 South Catalina Avenue which was on lot 4. The agreement was made while Trissel was in the Hawthorne Community Hospital. Mrs. Riganti testified that on that occasion Trissel said "he would will us this property where we are." This obviously meant the property where they lived, viz., lot 4. Witness Mary Czuleger was asked if Trissel ever mentioned the property at 623 South Catalina. She answered in the affirmative. She was then asked: "Can you tell the Court what he said with reference to that?" Her answer was: "He said that that property would eventually go to the Rigantis." William F. Czuleger in an affidavit stated, *inter alia,* that in a conversation with Trissel whom he had known for many years, Trissel told him

that he intended to give the Rigantis "the property where they resided in consideration and part payment of the care which they had furnished to him . . ." On a later occasion Czuleger had a conversation with Trissel in which the latter indicated he would be interested in selling two of his lots, but that Trissel stated he did not include the third lot that he owned because that was where the Rigantis resided and he intended to give it to them at his death. The foregoing testimony amply supports the trial court's determination that plaintiffs were to have lot 4—the property on which they lived.

Defendant also complains that the court did not make a specific finding on her plea of the statute of frauds. The answer to this complaint is twofold: (1) Implicit in the findings that the court did make and in the judgment is an implied finding against her on the statute of frauds, and (2) In a conclusion of law the court declared that plaintiffs are entitled to "quasi specific performance to avoid the perpetration of a fraud upon them . . ." This clearly indicates an adverse finding on her plea of the statute of frauds.

Defendant argues that "the judgment quieting title in plaintiffs violates the rule that the owner of an equitable interest cannot maintain an action to quiet title against the owner of the legal title." In seeking to apply this principle to the instant case, defendant indulges in an erroneous premise. It is true that plaintiffs' first cause of action was a quiet title pleading in which they alleged that they were the owners in fee of the property here involved. The trial court found that "James R. Trissel from September 1949 to November 25, 1960, the date of his death, was the legal owner in fee" of the property here in controversy. As is apparent from reading the findings quoted in the footnote, the trial was on the theory of quasi-specific performance growing out of Trissel's breach of the oral agreement between him and the Rigantis. The initial conclusion of law that the court drew is that "plaintiffs are entitled to the relief prayed for to wit: quasi specific performance . . ." The court then declared that plaintiffs "are the sole beneficial and equitable owners of . . . Lot 4." Its next declaration is that defendant "holds the legal title of said last hereinabove described real property as *constructive trustee for the sole use and benefit of plaintiffs* and that she be required to execute a Grant Deed thereto and deliver the same to plaintiffs." (Italics added.) The judgment decreed that "plaintiffs have quasi

specific performance of the oral agreement entered into on or about November 19, 1954, with James R. Trissel, to wit: that Julius Riganti and Dolores Riganti, husband and wife, are the sole and only beneficial and equitable owners of that certain improved real property described as: Lot 4 of Block 188 . . . commonly known as 623, 623½, 623-A South Catalina Avenue, Redondo Beach, California.'' The judgment awards plaintiffs the ''immediate and exclusive possession'' of said property, and decrees that a writ of possession issue to enable plaintiffs to acquire possession thereof. The judgment also decrees that that defendant has no right, title, or interest in this property, and enjoins her, her heirs, et cetera, from asserting or claiming any title or interest therein. From the foregoing it is clear that this case was tried and decided as a suit in equity in which plaintiffs established their equitable interest in Lot 4; that defendant held the legal title as a constructive trustee for the use and benefit of plaintiffs; and that defendant was required to execute and deliver a grant deed to Lot 4 to plaintiffs. It is therefore apparent that this is not a quiet title action and there is no violation of the rule that the owner of an equitable interest cannot maintain an action to quiet title against the owner of the legal title.

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied February 15, 1967, and appellant's petition for a hearing by the Supreme Court was denied March 22, 1967.