[Civ. No. 43968. Second Dist., Div. Four. Jan. 16, 1975.]

Estate of JAMES R. TRISSEL, Deceased.
MURIEL McELHINNEY, as Administratrix, etc., Petitioner and
Appellant, v.
JULIUS RIGANTI et al., Objectors and Respondents.

## COUNSEL

John W. Brooks and Don Edwin Raney for Petitioner and Appellant.

O'Connor & Wood and Timothy M. O'Connor for Objectors and Respondents.

## OPINION

**FILES, P. J.**—Appellant Muriel McElhinney is the successor administratrix and residuary legatee in this estate. She appeals from the order of March 8, 1973, which disapproved in part her first and final account. The portion not approved was her proposal to charge respondents Julius and Delores Riganti (hereinafter Rigantis) with a share of the estate and inheritance taxes and costs of administration.

The basis of the probate court's decision was that the portion of the decedent's property which passed to the Rigantis had been received by them free and clear of the burdens of the probate proceeding. The court also relied upon the order determining inheritance tax, which had included the Rigantis' property in the property taxed against McElhinney.

McElhinney contends that the Rigantis' property is subject to probate, and that as administratrix she is entitled to charge the Rigantis for a proportion of the expenses of administration and taxes. Both parties invoke certain prior proceedings as constituting res judicata in support of their respective positions.

## I.  *Prior Proceedings*

Decedent died testate on November 25, 1960. Shortly thereafter, his will was admitted to probate, and Frank L. Perry qualified as executor. The will left the entire estate to McElhinney except $500 given to the testator's son.

On April 21, 1961, Rigantis filed a civil suit against Perry as executor and McElhinney as beneficiary seeking quasi-specific performance of an alleged oral contract with deceased to leave Rigantis certain real property (Lots 4 and 5) at his death. Two days prior to the filing of that civil action, the inheritance tax appraiser rendered his report assessing an inheritance tax in the amount of $12,523.12, all against McElhinney. No objection having been filed, the order of the superior court fixing inheritance tax was routinely signed on May 16, 1961. No appeal or other challenge was ever made to that inheritance tax order.

Executor Perry died on July 1, 1961. Although three other personal representatives thereafter served successively during the pendency of the civil action, no substitution of parties was ever made. The suit was defended by McElhinney, who had appeared only in her individual capacity, even though she had been appointed special administratrix prior to the trial. After a nonjury trial before Judge O'Connor, the court, in January 1965, awarded Rigantis quasi-specific performance as to Lot 4, but denied them any recovery of Lot 5.

McElhinney appealed and the judgment was affirmed by this court. (*Riganti* v. *McElhinney* (1967) 248 Cal.App.2d 116 [56 Cal.Rptr. 195].)

The next lawsuit, McElhinney, as Special Administratrix v. Riganti, No. SW C 13510, was filed in the superior court August 19, 1968, to recover for the estate over $15,000 in rents theretofore collected by Rigantis both from Lot 4 and from other property.[1] Rigantis cross-complained for a partial refund of rentals they had paid to the estate.

After a trial before Judge Healey, the court made findings of fact and conclusions of law declaring that the res of the constructive trust (Lot 4) was subject to administration in the estate of the decedent, and that the administratrix was entitled to an accounting of the receipts and disbursements from Lot 4. The judgment awarded the administratrix a recovery of $1,200 from the Rigantis, which was the amount which the parties stipulated had been collected with respect to Lot 5.

The superior court file in case SW C 13510 also contains a minute order dated July 22, 1969, directing McElhinney, as administratrix and as individual legatee, to execute a conveyance of Lot 4 to the Rigantis, the deed to recite that it is executed "pursuant to the mandate contained in the case of *Riganti* v. *McElhinney.* . . ."

## II.   *The Scope of Administration*

Lot 4 became the property of the Rigantis as a result of a promise made by the decedent to leave it to them by will. Since the decedent failed to keep that promise, the Rigantis brought a civil action whereby a trust was impressed upon the property which had been promised to them, and the constructive trustee was ordered to execute a deed to the equitable owners. So much was determined in *Riganti* v. *McElhinney, supra,* 248 Cal.App.2d 116. The relationship between that form of relief, and the administration of the estate, is explained in *Ludwicki* v. *Guerin* (1961) 57 Cal.2d 127, 131-132 [17 Cal.Rptr. 823, 367 P.2d 415]:

"When a person dies, the title to his property, real and personal, passes to the person to whom it is left in his will or who takes by intestacy, but all his property is subject to the possession of the executor or administrator for purposes of administration. (Prob. Code, § 300.) [Fn. omitted.] If the will creates an express trust, the legal title of the trustee and the equitable title of the beneficiary vest as of the date of death, even though the trust estate is residuary in character. (*Estate of Platt,* 21 Cal.2d 343, 347 [131 P.2d 825].) The same principle should be applied to

---

[1]We have taken judicial notice of the superior court file because it appears that the trial court did so in arriving at the order which is appealed from.

a constructive trust based on conduct of the decedent, including failure to perform a promise to make a will. Accordingly in such a situation a constructive trust in favor of the promisee and against those who take under decedent's will or by intestacy may be imposed immediately after the date of death.

"The action to impose the trust does not interfere with the proceedings in probate. It does not set forth a claim against the estate, or against the executor, or against his right to possession for the purposes of administration. The action is in effect a suit between a claimant under the contract and claimants under the will or by intestacy as to who is entitled to all or part of the estate, and it does not purport to interfere with the administration by the executor, who, with respect to the proceeding, is in the position of a stakeholder. (*Estate of Healey,* 137 Cal. 474, 477 [70 P. 455].) The executor, however, may properly be made a party defendant, as was done in this case, for the purpose of restraining him from distributing the property without regard for plaintiff's interests. (*Furman v. Craine,* 18 Cal.App. 41, 46-47 [121 P. 1007].)"

A source of confusion in the case at bench is that the judgment of the superior court in *Riganti* v. *McElhinney* contained no express recognition that a probate proceeding was pending. Nevertheless, the decision of that court, as reflected in its findings of fact and conclusions of law, is limited to a determination of the substantive rights of the Rigantis against Muriel McElhinney as legatee. Although at the time of the judgment, she was also the special administratrix, the decision did not involve any question of the right, power and duty of the personal representative to administer the estate, including Lot 4. (Cf. *Pluth* v. *Smith* (1962) 205 Cal.App.2d 818, 829-830 [23 Cal.Rptr. 550].)

The opinion of the Court of Appeal in *Riganti* v. *McElhinney* took note of the peculiar language of the judgment and pointed out that the findings and judgment read as a whole showed that the only relief granted was in the nature of quasi-specific performance, and was not a judgment quieting title. The part of the judgment reciting that the defendant had no right, title or interest in the property was construed by the Court of Appeal to mean that the defendant (Muriel McElhinney) held property only as a constructive trustee and that she had no equitable interest therein. (248 Cal.App.2d at pp. 124-125.) The requirement in the judgment that the defendant execute a deed to plaintiffs referred to the duty of defendant McElhinney as the devisee under the will. It did not relate to her duties as special administratrix (and later as administratrix

with will annexed), which included the responsibility for paying debts of the decedent, expenses of administration and taxes, and charging those obligations against the person or persons beneficially interested in the estate, according to law, and under the direction of the probate court.

The subsequent litigation over the rents did raise a question of the scope of the administratrix's duties, and the trial court's findings in that case included the statement "that the res of said constructive trust is subject to administration in the estate of the decedent."

In the findings of the superior court which accompanied the order presently on appeal, the court commented: ". . . That although the findings in said rented [*sic*] recovery case may be ambiguous this court now finds that neither the Findings of Fact, Conclusions of Law nor the Judgment therein determined that said real property (Lot 4) is subject to administration in this estate."

It is unnecessary to rely upon the findings in the rent recovery case as res judicata. The statement therein that the trust was subject to administration was and is a correct statement of law.

We do not overlook the minute order dated July 22,.1969, in the file of that case, directing McElhinney to execute a grant deed to the Rigantis. The purpose and effect of that minute order is a mystery which we need not explore. It appears not to have been a part of the relief sought by the pleadings (which contained claims for money) and it was not carried forward into the judgment.

The record on appeal also contains 'a minute order made by Judge MacFaden in the probate proceeding on August 20, 1971, which states as follows: "Petition for authority to borrow is denied. The Rigantis are liable for their portion of the administration costs and whatever inheritance is imposed on them. A lien may be imposed on the real property when those amounts are determined."

There is nothing in the record to indicate that any issue was pending before Judge MacFaden at that time except a question whether or not the administratrix should be authorized to borrow money. We, therefore, cannot regard the language of the minute order as a decision of anything relevant to this appeal.

We next turn to a resolution of the specific issues raised by this appeal.

### III. *Expenses of Administration*

█ Property subject to a constructive trust arising from the decedent's unfulfilled promise to make a devise or bequest, being a part of the probate estate, may be resorted to for expenses of administration. (*Estate of Turino* (1970) 8 Cal.App.3d 642, 646 [87 Cal.Rptr. 581].) But specific devises and legacies are exempt from such liability if there is sufficient residuary estate. (See Prob. Code, § 750; *Estate of Dolley* (1968) 265 Cal.App.2d 63, 70 [71 Cal.Rptr. 56].) The property passing to the Rigantis is in satisfaction of a promise to devise specific property (see Prob. Code, § 161) and thus the Rigantis are entitled to the same treatment as the beneficiaries of a specific legacy. They are not chargeable with expenses of administration so long as the residuary estate is sufficient for that purpose.

### IV. *Federal Estate Tax*

█ Probate Code section 970 provides that when the administrator has paid an estate tax to the federal government, the amount so paid, except where the will otherwise directs, shall be equitably prorated among the persons to whom the property may be transferred. That section is applicable here. The will contains no direction with respect to payment of taxes. Hence, the total tax must be equitably apportioned among those beneficially interested in the estate, including the Rigantis.

### V. *State Inheritance Tax*

█ The state inheritance tax, unlike the federal estate tax, is a tax on the privilege of succeeding to property. (See *Estate of Rath* (1973) 10 Cal.2d 399, 405 [75 P.2d 509, 115 A.L.R. 836].) Thus, the amount of the tax is established separately with respect to each transferee of a taxable interest. (See *Cohn v. Cohn* (1942) 20 Cal.2d 65, 67 [123 P.2d 833].)

In the present estate, an order fixing inheritance tax was made on May 16, 1961, determining that the tax upon property transferred to Muriel McElhinney was $12,523.12. The property which was the basis of this assessment included Lot 4. No inheritance tax was imposed upon any other person. █ An order determining inheritance tax "has the force and effect of a judgment in a civil action," (Rev. & Tax. Code, § 14672) and the doctrine of res judicata is applicable. (*Kuchel v. Tolhurst* (1952) 39 Cal.2d 224, 228 [246 P.2d 41].)

McElhinney has paid the tax in full from money for which she is accountable as administratrix. No issue is pending as to the amount of the tax, or as to liability as between the State and any transferee of property left by the decedent. ■ The issue to be decided is whether the administratrix, in her final accounting, may make any apportionment of the amount paid as between herself, as residuary legatee, and the Rigantis as the ultimate transferees of Lot 4.

We assume that it would have been legally possible to have had the tax upon the value of Lot 4 imposed upon the Rigantis had someone undertaken timely and appropriate means to accomplish it. But that was not done, and the probate court is obliged to deal with the situation as it appears upon the administratrix's application for approval of her account.

The report of the administratrix shows that in 1970 an inheritance tax appraiser (who was not the appraiser who reported and computed the tax in 1961), made a recomputation of inheritance taxes based upon a division of the property between McElhinney and the Rigantis. This recomputation was made at the request of the administratrix and set forth in a letter addressed to her attorneys. It does not appear that this recomputation ever received any official recognition by the State Controller or the superior court. There was no modification of the inheritance tax order of May 16, 1961. We, therefore, are unable to find any legal effect for the "recomputation" as a change in the tax liability as between the State and Muriel McElhinney, the person to whom the $12,523.12 tax was assessed.

In analyzing the duties of the administratrix, with respect to the Rigantis, we look back to the substantive law by which the Rigantis acquired their interest. The decedent had promised to transfer Lot 4 to them by will, but he failed to perform his promise. To remedy this breach a court of equity decreed that the Rigantis were entitled to relief analogous to specific performance of the promise to make a will. Had the decedent's promise been performed by him, the Rigantis would have received title as of the date of death subject to administration and subject to the payment of such inheritance tax as might lawfully have been imposed upon that transfer.

The order determining inheritance tax would have fixed the amount of tax payable by the Rigantis, and the personal representative would have been required to pay it and collect the Rigantis' share from them before

distributing their property to them (Rev. & Tax. Code, §§ 14101, 14121, 14122; *Cohn* v. *Cohn, supra,* 20 Cal.2d at p. 68.)

The present rights of the Rigantis, conferred by a court of equity, should be measured by the performance which was promised by the decedent (cf. *Laurance* v. *Security-First Nat. Bank* (1963) 220 Cal.App.2d 622, 625 [34 Cal.Rptr. 56]).

The probate court, in supervising the administration of the estate and decreeing distribution to the persons entitled, is in effect, carrying out one of the aspects of the specific performance ordered by the court of equity in *Riganti* v. *McElhinney.* By this analysis, it is proper that Lot 4 be distributed to the Rigantis subject to the obligation to reimburse the administratrix for the amount which their inheritance tax would have been if the decedent had left Lot 4 to them by will. The amount for which they may now be charged is not a pro-rata share of what the administratrix paid. If the tax had been imposed originally upon three beneficiaries, the total tax would have been smaller, due to the effect of three exemptions and graduated rates.

The record shows the administratrix paid the State Controller some interest on the inheritance tax. Whether the equitable adjustment between the Rigantis and McElhinney requires some allowance for interest is a matter which was not explored by the probate court. We leave this for consideration after remand.

The order of March 8, 1973, is reversed insofar as it refused to allow the administratrix to apportion the federal estate tax and to receive a credit for a portion of the inheritance tax. The case is remanded to the superior court for appropriate modification of the order. The administratrix shall recover costs on appeal from the Rigantis.

Jefferson, J., and Cole, J.,* concurred.

*Assigned by the Chairman of the Judicial Council.