[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1463 
OPINION
 PROCEDURAL HISTORY
This is a case in which quasi-specific performance is sought under a constructive trust theory on the basis of an oral representation. Appellants, John and Mary Wright, appeal from a judgment granting respondent's *Page 1464 
motion for summary judgment of appellants' petition pursuant Probate Code section 9860[1]
Elnora Brenzikofer died on January 13, 1991. Probate proceedings commenced thereafter. On March 21, 1994, appellants filed their Probate Code section 9860 petition seeking specific performance of an oral agreement made by the decedent to convey to them the house they were renting from her. Appellants contend that the oral agreement to do so had been made by the decedent in return for some 26 years of care they had given to her and her cats. Respondent, the administrator of the estate of Brenzikofer, filed his notice of motion for summary judgment on December 14, 1994. The motion was heard and granted on January 26, 1995. A motion for reconsideration was subsequently denied.
 STATEMENT OF FACTS
Appellants became tenants of property located at 912 North Avenue 64 in the City of Los Angeles owned by Elnora Brenzikofer (hereinafter the decedent). At the time appellants became tenants in 1964 and for the entire time of the tenancy, the decedent lived next door. Decedent's husband had passed away 10 years earlier in 1954. Decedent lived alone. Appellants claim that over the years decedent and they developed a friendship and that as decedent aged, they took care of her and performed many duties for her. From 1964 to 1981 appellants prepared decedent's taxes several times.
Appellants allege they approached decedent on many occasions regarding the purchase of the property and each time decedent told them that if they would stick it out, the house would be theirs.
After 1981 decedent was no longer able to drive a vehicle. Appellants helped decedent purchase food for herself and for the numerous cats that she owned. In April 1981 the only family member to visit her, a cousin, died. *Page 1465 
Thereafter, decedent's own health deteriorated and she became an invalid. Appellants allege that in 1981 decedent made a promise to them that she would will them the house they were renting if appellants would agree to take care of her and her cats. Decedent also made this sentiment known to appellants' relatives and to neighbors.
From April 1981 until August 1985, appellants allege they cooked special meals for decedent three times a day and took them over to her. Appellants fed and cleaned the animals. Decedent made particular requests as to what her cats should eat and appellants observed these requests. Decedent had a bell which she used to summon appellants whenever she needed anything.
In August 1985 after a fall, decedent entered a board-and-care facility. Appellants went to the home every day to get the decedent out of bed and walk her. Without this attention, decedent would have been required to stay at a convalescent home which would have cost her twice as much. On May 6, 1986, appellants were appointed conservators of decedent.
In August 1986 the department of building and safety came to appellants' home and questioned them about the decedent's residence. As a result, appellant John Wright and a crew of gardeners did some cleanup at decedent's property.
On July 7, 1989, appellants sought and received reimbursement for their expenses and services performed as conservators from 1986 through 1989 in the amount of some $26,000. No reimbursement was sought or obtained for the assistance rendered prior to 1986. In their conservatorship petition for fees, appellants made known their reliance on decedent's promise to will them their home and property as compensation for all the years they took care of the decedent and all her cats. From 1985 to the present, appellants allege they have taken care of decedent's pets. They further note they have built a facility in their own backyard so as to avoid placing the cats in a kennel. Because of the pets, appellants further allege that they have been limited in where they can reside because they continue to take care of all of decedent's cats in reliance on decedent's promise to will them their home.
 ISSUES
1. Did the trial court abuse its discretion in granting summary judgment?
2. Does the quasi-specific performance claim and constructive trust remedy negate the statute of frauds? *Page 1466 
3. Does the statute of limitations bar appellants' claim?
4. Unjust enrichment.
 DISCUSSION
The primary issue is whether the trial court abused its discretion by granting the motion for summary judgment on the basis that there were no material issues of fact.
(1) "To be entitled to summary judgment, a defendant must establish `as a matter of law' that none of plaintiff's [or petitioner's] asserted causes of action can prevail. (Code Civ. Proc., § 437c, subd. (c); Molko v. Holy Spirit Assn. (1988)46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) . . . On review the evidence and the parties' arguments are considered de novo [citation], and the reviewing court shall `strictly construe the moving party's papers and liberally construe those of the opposing party to determine if they raise a triable issue of material fact.' [Citation.]" (Bushnell v. Japanese-AmericanReligious Cultural Center (1996) 43 Cal.App.4th 525, 528-529 [50 Cal.Rptr.2d 671].) No deference is given to the trial court's ruling. (Ghirardo v. Antonioli (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960], remanded to the Court of Appeal on other grounds.) The fact that we are dealing here with a petition in probate rather than a complaint is immaterial on the issue of summary judgment.
Appellants contend that there are material issues of fact, i.e., that sufficient facts exist to support their claim for quasi-specific performance of an oral contract; that sufficient facts exist supporting the imposition of a constructive trust; and, that sufficient facts exist supporting a claim that their petition is not barred by the statute of limitations.[2]
 I Quasi-specific Performance of an Oral Agreement
The facts herein are not unique. In Riganti v. McElhinney
(1967) 248 Cal.App.2d 116, 122 [56 Cal.Rptr. 195], we note the plaintiffs there lived for five years in a duplex downstairs from their landlord/decedent. He had promised Riganti and his wife that if they took care of him and looked after his realty, collected the rents for him and accounted to him while he lived, that the property that they lived in would be theirs at his death. Although *Page 1467 
Riganti had special skills as a mechanic and in certain building trades and could have improved his station in life by leaving the property, he did not and honored his commitment to decedent. When the decedent failed to provide for Riganti in his will, the court found the Rigantis were entitled to "`quasi specific performance to avoid the perpetration of a fraud upon them. . . .'" (Id. at p. 124.)
(2) The Riganti court found "solid judicial support" for its position in McCabe v. Healy (1902) 138 Cal. 81, 84-85 [70 P. 1008] wherein the Supreme Court supported the treatise that "`[c]ourts of equity will, under special circumstances, enforce a contract to make a will, or to make certain testamentary disposition; and this may be done, even when the agreement was parol, where in reliance upon the contract the promisee has changed his condition and relations so that a refusal to complete the agreement would be a fraud upon him. The relief is granted, not by ordering a will to be made, but by regarding the property in the hands of the heirs, devisees, assignees, or representatives of the deceased promisor, as impressed with a trust in favor of the plaintiff, and by compelling defendant, who must of course belong to some one of these classes of persons, to make such a disposition of the property as will carry out the intent of the agreement.'"
The facts in Healy are again not dissimilar. Healy, a bachelor, had left Ireland, the land of his birth, for some 37 years before returning there again. His family had thought him dead. His sister, a widow, had a son of 14 years of age, by name of Ulty McCabe. Healy, having taking a liking to the boy, agreed that if the lad returned with him to Lassen County and assisted Healy in the management of his cattle ranches and other properties as well as of his person as he aged, that Healy would treat the boy as his own son and grant him all his property as of his death. When Healy died intestate after the two had spent the next seventeen years together as father and son, the court found it would be a fraud upon Ulty McCabe not to grant him the promised legacy and that further it would not work a gross injustice upon other third parties. (138 Cal. at p. 85.)
(3) Hence, when one devotes work, energy and effort on behalf of a promisor and in reliance on the promises made forgoes opportunities elsewhere whether it be for 17 years as in Healy
or 5 years as in Riganti or 26 years as we note herein, then "[s]ince the making of a will cannot be compelled, there can be no specific performance of such a contract in the strict sense, but under certain circumstances equity will give relief equivalent to specific performance by impressing a constructive trust upon the property which decedent had promised to leave to plaintiff." (Ludwicki v. Guerin (1961) 57 Cal.2d 127, 130 [17 Cal.Rptr. 823, 367 P.2d 415].) *Page 1468 
Is there evidence herein of appellants' contention that they were to be willed the property sufficient to create an issue as to whether the property was impressed with a constructive trust? Looking at the evidence in the most favorable light to the appellants, we note that decedent's promise to will the home to appellants was supported by the affidavit of Natividad Diaz, a neighbor of all the parties. He states, "[Decedent] told us that she didn't know what she would do without [appellants]. She stated that [appellants] were like her hands and feet and that they did everything for her. . . . [Decedent] stated to us that in her will, the house that [appellants] were living was going to be for them." Otilia Diaz, wife of Natividad Diaz, relates the same statements in her affidavit.
Gloria MacDonald, daughter-in-law of appellant Mary Wright, indicates in her affidavit that "[o]n many occasions [decedent] stated to us that she would will the house the [appellants] lived in to them." Mary Wright's son, James MacDonald, submitted an affidavit with similar language.
Appellants' conduct in failing to move from the location and in taking care of decedent and her numerous cats over 26 years, coupled with the oral agreement made by decedent as indicated in the affidavits, provide sufficient evidence to support an action for quasi-specific performance based on oral representations. We hold the trial court abused its discretion in granting summary judgment.
 II Is the Action Barred by the Statute of Limitations? (4) An action for quasi-specific performance accrues on the death of the person who breached the agreement. (Ludwicki v.Guerin, supra, 57 Cal.2d at p. 130.) Where quasi-specific performance by declaration of a constructive trust on real property is sought on the basis of an oral agreement pursuant to which that property was to have been left by will, the two-year period of limitation generally applicable to contracts not in writing[3] is not applicable. (Potter v. Bland (1955)136 Cal.App.2d 125, 134 [288 P.2d 569]; Keefe v. Keefe (1912)19 Cal.App. 310, 314 [125 P. 929]; 64 Cal.Jur.3d, Wills, § 79, pp. 110-111.)
Under such circumstances, when the property is impressed with the qualities of a resulting trust, the action may be brought within four years. *Page 1469 
(Potter v. Bland, supra, 136 Cal.App.2d at p. 134; 64 Cal.Jur.3d, Wills, § 79, p. 111.) The theory is that the statute of frauds does not apply where the plaintiff is entitled to the imposition of a constructive trust, for such a trust arises by operation of law. (Briggs v. Nilson (1964) 226 Cal.App.2d 342, 346 [38 Cal.Rptr. 68].)[4]
Decedent died on January 13, 1991. Appellants' Probate Code section 9860 petition was filed March 21, 1994, well within the four-year statute of limitations. It was error of the trial court to grant summary judgment on the basis of a statute of limitations of less than four years from the date of decedent's demise.
 III Unjust Enrichment
Respondent argues that to award the property to appellants would be unjust enrichment since they received $26,000 in reimbursements for costs and for services rendered as conservators. Respondent's position is that Riganti stands for the principle that only where the claimant cannot be compensated with a pecuniary sum is the specific performance appropriate. We note that although appellants claimed in their declaration filed as part of their request for fees in the conservatorship an amount of $170,126.90 including $33,180 for preconservatorship services, they settled instead for only a fraction of their claim, the sum of only $26,000.
The record is unclear as to the reason for this settlement. However, the issue of unjust enrichment is not before us. This is an issue for trial.
 CONCLUSION
The summary judgment is reversed. The matter is remanded to the trial court for trial on the issue of whether a constructive trust was created by the oral representations of the decedent sufficient to require quasi-specific *Page 1470 
performance of the oral agreement. Attorney fees and costs are awarded to appellants.
Vogel (C.S.), P.J., and Baron, J., concurred.
[1] Probate Code section 9860 reads as follows: "(a) The personal representative or any interested person may file a petition requesting that the court make an order under this chapter in any of the following cases: [¶] (1) Where the decedent while living is bound by a contract in writing to convey real property or to transfer personal property and dies before making the conveyance or transfer and the decedent, if living, could have been compelled to make the conveyance or transfer. [¶] (2) Where the decedent while living binds himself or herself or his or her personal representative by a contract in writing to convey real property or to transfer personal property upon or after his or her death and the contract is one which can be specifically enforced. [¶] (3) Where the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another. [¶] (4) Where the decedent died having a claim to real or personal property, title to or possession of which is held by another. [¶] (b) The petition shall set forth the facts upon which the claim is based."
[2] Respondent's objection to appellant's opening brief being filed one day late is duly noted and overruled since no notice was issued pursuant to California Rules of Court, rule 17(a).
[3] Code of Civil Procedure section 339, subdivision 1 recites the usual two-year statute of limitations for oral contracts: "Within two years: 1. An action based upon a contract, obligation or liability not founded upon an instrument of writing. . . ."
[4] In reversing a summary judgment case relating to Probate Code section 150, we note the Fourth District made clear that "[i]t is a firmly rooted legal principle in this state that `"`. . . the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting or aiding the party who relies upon it in the perpetuation of a fraud. . . .'"' [Citations.]" (Juran v.Epstein (1994) 23 Cal.App.4th 882, 894 [28 Cal.Rptr.2d 588];Tenzer v. Superscope, Inc. (1985) 39 Cal.3d 18, 30 [216 Cal.Rptr. 130, 702 P.2d 212]; Seymour v. Oelrichs (1909) 156 Cal. 782, 794 [106 P. 88].) *Page 1471