Filed 10/31/24  Betchart v. Betchart CA1/2
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ANTHONY BETCHART, Plaintiff and Appellant, v. WALDTRAUT BETCHART, Defendant and Respondent. | A167024 (Alameda County Super. Ct. No. RG19031562) |

Plaintiff Anthony Betchart (Tony) sued his mother, defendant Waldtraut Betchart (Wally),[1] alleging she made an oral agreement to give him certain real property upon her death.  The trial court entered judgment against Tony after his presentation of evidence, concluding he had failed to prove any of the elements to establish such a contract.  On appeal, Tony argues that the trial court: (1) applied the wrong standard of proof; (2) improperly assumed that Tony should have litigated the oral agreement in prior actions against his mother; and (3) lacked substantial evidence to support its judgment.  We affirm.

---

[1] Our references to plaintiff as "Tony" and defendant as "Wally" are consistent with the designations used by both parties and the trial court.

# BACKGROUND

## The Subject Property

Wally and her late husband Ludwig founded a demolition and equipment rental company in the 1960's. They moved operations to a property they purchased at 42270 Osgood Road in Fremont, California (Property), and incorporated the business as Ludwig Betchart, Inc. (LBI). Over the years, three of the Betcharts's six children worked at LBI. Tony began working for LBI while he was still in high school.

In 1992, Wally and Ludwig executed a revocable trust that transferred the Property to the trust. The trust provided that the Property would be distributed in equal shares to Tony and one of his brothers if they were still "active" in LBI.

In May 2003, Wally and Ludwig amended the trust. The May 2003 amendment provided that the Property would be distributed equally among the six Betchart children, and the owner of LBI would have the right to rent the Property at a reasonable rate "as long as he wishes." According to Wally, she gave Ludwig copies of the changes but wished she had spoken to him "at more length about it." According to Tony, Ludwig was not aware of the change in distribution of the Property. Ludwig died in July 2003.

Wally executed several other amendments to the trust over the next two years. The first amendment, in August 2003, provided for distribution of one half of the Property to Tony if he survived Wally and was "active" in the operation of LBI at the time of her death, with the balance allocated to the other Betchart children. The second amendment, in April 2004, provided for distribution of the Property to Tony if he was active in LBI and paying rent on the Property at the time of Wally's death. The third amendment, in

2

March 2005, provided for distribution of the Property in the same manner as in the May 2003 trust document: equally among the six Betchart children.

**The Alleged Oral Agreement**

In July 2005, Wally and Tony encountered each other at the Property and had a conversation. According to Tony, he expressed frustration about running LBI, and Wally agreed that if Tony continued operating the business, she would transfer ownership of LBI to him and leave the Property to him after her death. According to Wally, she only agreed to gift Tony stock to give him a majority controlling interest in LBI. She did not make any agreement with Tony regarding disposition of the Property.

Wally then met with her accountant, who recommended that she sell (not gift) the stock to Tony to avoid certain tax consequences. Tony and Wally subsequently executed an agreement for the sale of LBI stock purchased by a $355,170 promissory note, a security agreement protecting the promissory note, a lease of the Property with Wally as landlord and Tony as guarantor, and a contract of sale between Wally and Tony to purchase certain equipment. Each of the first three agreements included integration clauses stating they constituted the entire agreement between the parties.

In August 2005, Wally executed a fourth amendment to the trust. It provided for distribution of the Property to Tony if he survived Wally.

**The Prior Actions**

The trial court described the litigation history between Tony and Wally as a "14-year contentious legal battle," in which Tony "fired the first salvo." And then some.

In 2008, Tony filed a petition to preserve Wally's testimony because he "expect[ed]" to sue Wally after her death for extinguishing his interest as the "sole beneficiary" of the Property. The petition was denied as untimely.

3

Later that year, Wally filed an action for involuntary dissolution of LBI alleging "persistent fraud and mismanagement" by Tony. After a bench trial, the trial court concluded that Wally had failed to prove the elements for involuntary dissolution.

In 2009, Tony filed a complaint for declaratory and injunctive relief against Wally. It alleged that Tony had a contractual right to the Property pursuant to the terms of the original trust executed in 1992. The trial court granted Wally's motion for nonsuit. The ruling was affirmed by this court in an unpublished opinion, *Betchart v. Betchart* (Apr. 19, 2013, A134063).

Meanwhile, Tony had also filed a petition seeking to instruct Wally not to sell, transfer, encumber or dispose of the ownership interest in the Property in derogation of his alleged right to the Property under the 1992 trust. The petition was stayed pending resolution of Tony's complaint for declaratory and injunctive relief, and dismissed after his appeal in that action proved unsuccessful.

In 2015, Wally filed a complaint against Tony alleging he had breached the promissory note for purchase of the LBI stock by failing to pay principal that came due. Judgment was entered for Tony after a jury found that the note was to be renewed at the end of its term because Wally was still alive.

**This Action**

In 2019, Tony filed the complaint against Wally in this action for breach of contract and breach of fiduciary duty. It alleged, for the first time, that Tony had an irrevocable contractual right to the Property pursuant to a July 31, 2005 oral agreement with Wally. The complaint alleged that Wally had agreed she would transfer the Property to Tony upon her death and that this disposition would be irrevocable, provided he continue to operate LBI. The complaint also alleged that Wally had recently listed the Property for sale, in breach of that agreement.

The matter proceeded to a bench trial, where Tony clarified his claim was to enforce an oral contract to make a testamentary disposition. Tony argued that he would prove the three elements of contract formation: (1) contract terms clear enough that he and Wally understood what they were required to do; (2) agreement to give each other something of value; and (3) agreement to the terms of the contract. (See CACI No. 302.)

After Tony presented his evidence, Wally moved for judgment. (Code Civ. Proc., § 631.8 [providing that a party may move for judgment upon completed presentation of evidence by the other party and the trial court may, after weighing evidence, render judgment in favor of the moving party with a statement of decision].) The trial court granted the motion and entered judgment in favor of Wally.

As a preliminary matter, the court noted the parties' disagreement about whether Tony had to prove his claim by clear and convincing evidence or by a preponderance of the evidence. The court found it "unnecessary" to resolve this issue because, "having considered all the testamentary and documentary evidence, weighed the credibility of the witnesses, and reviewed

5

the parties' subsequent acts," Tony had failed to meet "even the lower standard of proof by a preponderance of the evidence."

The trial court then concluded that Tony had failed to prove any of the three elements for contract formation. First, it found there was "no evidence that the contract terms were clear, much less clear enough that the parties could understand what each was required to do." It pointed to Tony's "convoluted" testimony regarding the July 31, 2005, conversation with Wally: " 'I couldn't tell you the truth what the exact words were. I don't really know. She said run the business. I don't know if she said run the business. . . . She just said run the business. You're getting the yard. It's going to be the way it was from like '92.' " The court explained that this alleged statement was "open to a lot of interpretation" and, viewed in the light most favorable to Tony, could mean that Wally agreed to make a *revocable* devise of the Property. Indeed, the evidence (e.g., amendments to the trust) had shown that Wally went "back and forth" between "what is fair and right for all her children" and the original terms in 1992 trust document that "favor[ed] the child/children" who continued LBI. But Tony's testimony "completely failed to support his allegation that [Wally] agreed to make an *irrevocable* bequest to him of anything." (Italics added.)

Second, the trial court concluded that Tony had "failed to prove that he offered any consideration or detrimental reliance as his part of the bargain." Tony had testified that he was "going to continue" running LBI and didn't think he had considered job alternatives at the time of the July 31, 2005 conversation. He continued: "It wasn't like I was going to leave. This was something my dad died for, building this business."

Third, the trial court concluded that Tony had "failed to establish any credible evidence that the parties entered into any agreement involving the

6

disposition of the Property on July 31, 2005." It found that Tony's testimony "was inconsistent, failed to support the claims made in his pleadings, and lacked credibility." Moreover, Tony's "failure to allege the existence of a purported agreement in any of the many previous lawsuits also undercut his credibility." Wally, on the other hand, had testified that she had not made an agreement with Tony that she would give him the Property. The court found this testimony "credible and persuasive."

This appeal followed.

## DISCUSSION

### Standard of Proof

Tony argues that the trial court applied the wrong standard to conclude he had failed to prove the elements of his claim. "The general rule in this state is that '[i]ssues of fact in civil cases are determined by a preponderance of testimony.'" (*Weiner v. Fleischman* (1991) 54 Cal.3d 476, 483, quoting *Liodas v. Sahadi* (1977) 19 Cal.3d 278, 288.) But Probate Code section 21700, subdivision (a)(4) provides that a contract to make a devise can only be established by clear and convincing evidence of an agreement between the decedent and the claimant.

According to Tony, the judgment in this action "states that the trial court applied the clear and convincing evidence standard," but he only needed to establish his claim by a preponderance of the evidence because Wally is still alive and thus not a "decedent" triggering the higher standard under Probate Code section 21700.

This is a plain mischaracterization of the judgment, in which the trial court explicitly stated that "having considered all the testamentary and documentary evidence, weighed the credibility of the witnesses, and reviewed the parties' subsequent acts," Tony had failed to meet "even the lower

7

standard of proof by a preponderance of the evidence." Consistent with this standard, the court concluded that Tony had "failed to establish any credible evidence that the parties entered into any agreement involving the disposition of the Property on July 31, 2005."

Tony contends that the dispute between the parties regarding the applicable standard of proof is nonetheless "important to this appeal" because of his argument that there was no substantial evidence to support the judgment. We need not resolve this dispute because, as explained below, we are not persuaded by Tony's argument regarding the sufficiency of the evidence even assuming the lower preponderance standard applies here.

**Witness Credibility**

Tony argues that the trial court's evaluation of his credibility—more accurately, the lack thereof—was based on an improper assumption that he should have "litigated" the July 31, 2005, agreement in the prior actions against Wally. Tony contends he could not have done so because he did not have any present, enforceable right to the Property until Wally first "threatened" his right (e.g., listed it for sale) or died.

Again, this argument mischaracterizes the judgment, which found that Tony's "failure to *allege* the existence of a purported agreement in any of the many previous lawsuits" undercut his credibility. (Italics added.) The trial court did not suggest Tony was required to seek enforcement of the July 31, 2005 agreement or otherwise *litigate* it. Accordingly, we need not and do not address the parties' arguments regarding *In re Marriage of Edwards* (1995) 38 Cal.App.4th 456 and whether Tony could have enforced the alleged July 31, 2005, agreement in the prior actions with Wally.

An appellate court "does not evaluate the credibility of the witnesses," but instead " 'defer[s] to the trier of fact on issues of credibility.' " (*Greisman*

8

*v. FCA US, LLC* (2024) 103 Cal.App.5th 1310, 1322, quoting *Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.)  "[I]n a bench trial, the trial court is the 'sole judge' of witness credibility." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582 (*Schmidt*).)  "The trial judge may believe or disbelieve uncontradicted witnesses if there is any rational ground for doing so," and such credibility determinations are "subject to extremely deferential review." (*Ibid.*)

Here, Tony had initiated two actions (the 2009 complaint and 2011 petition) in which he specifically claimed to have a contractual right to the Property.  But he alleged that this contractual right was created by the 1992 trust document.  Tony never even alleged the existence of the July 31, 2005 agreement, let alone that it was relevant to his purported contractual right to the Property.  Tony also submitted declarations to support his claims, again referring to the 1992 trust.  The trial court was well within its discretion to conclude that the lack of any allegation or reference to the July 31, 2005 agreement in these actions undermined Tony's credibility.  (See Evid. Code, § 1235 [evidence of prior inconsistent statements by witnesses]; *Meyer v. State Board of Equalization* (1954) 42 Cal.2d 376, 385 ["pleadings in prior actions or in others which are pending may be considered either as evidence or for the purpose of impeachment"].)

### Substantial Evidence

Tony argues that there is no substantial evidence supporting the judgment.  He contends, however, that we should not apply the substantial evidence standard and instead independently interpret the July 31, 2005 agreement because "there is no conflict in the evidence."

Appellate courts are not bound by interpretations of a contract where there is no extrinsic evidence introduced or where the extrinsic evidence is

9

not in conflict. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) But where extrinsic evidence *is* in conflict, such evidence "requires resolution of credibility issues" by the trial court and its construction of the agreement will be upheld if supported by substantial evidence. (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956.) That is precisely the case here, where there was conflicting evidence regarding whether or not Tony and Wally had entered into an agreement on July 31, 2005 regarding disposition of the Property. The trial court was required to resolve credibility issues on the matter: it found that Tony's testimony regarding the claimed agreement "was inconsistent, failed to support the claims made in his pleadings, and lacked credibility," whereas Wally's testimony of no such agreement was "credible and persuasive." Accordingly, we review the judgment for substantial evidence.

The principles of substantial evidence review are well settled. We must "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . . ." (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.) "[T]he focus is on the quality, not the quantity of the evidence. Very little solid evidence may be 'substantial,' while a lot of extremely weak evidence might be 'insubstantial.' " (*Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864, 871.)

For an appeal challenging the sufficiency of evidence presented by a plaintiff who succeeded at trial, our task is "to see if substantial evidence exists to support the [judgment] in favor of the prevailing party, not to determine whether substantial evidence might support the losing party's version of events." (*Schmidt*, *supra*, 44 Cal.App.5th at p. 582.) But for an

appeal like this one, challenging the trier of fact's conclusion that the plaintiff failed to carry his or her burden of proof at trial, "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*Ibid.*)

Tony has not met this standard here. We agree with the trial court that Tony's testimony did not support his claim and defer to the court's determination that his testimony lacked credibility. (*Schmidt, supra*, 44 Cal.App.5th at p. 582.) Tony testified that Wally told him he was "getting the yard," and that it was "going to be the way it was from like '92." Beyond the ambiguity of the phrase "getting the yard," the statement did not support Tony's claim because the 1992 trust provided for a *revocable* devise of the Property to Tony and one of his brothers if they were still active in LBI. His testimony did not prove an *irrevocable* contractual right to the Property. And Wally testified that she had not made any agreement with Tony giving him the Property, which the trial court deemed credible.

None of the other evidence cited by Tony warrants a contrary conclusion. As for the first element of contract formation (clear terms to understand what the parties were required to do), Tony argues that the terms of the alleged July 31, 2005 agreement were "clear enough" because Tony and Wally "took active steps" to carry out their purported contractual obligations: Tony continued operating LBI, while Wally executed a fourth amendment to the trust. This is unpersuasive because the fourth

11

amendment to the trust only provided a revocable devise of the Property, not an irrevocable contractual right.

Tony also cites notes written by his brother Herman in 2008 that stated: "Mom said she made agreement with Tony on a Sunday, July 31 because Tony handed shop keys to shop, saying he was going to quit, so on the same day mom made an agreement, (suspicious) giving him ½ LBINC, + 42270 Osgood." Herman, however, testified that Wally had never told him that she had made such a contract with Tony, and that the note was a combination of what Tony's claims were and what Herman had discussed with Wally.

As for the second element (exchanging something of value), Tony argues that his promise to continue operating LBI was sufficient consideration for getting an irrevocable contractual right to the Property. He cites authority recognizing value " ' "where in reliance upon the contract the promisee has changed his condition and relations." ' " (*Riganti v. McElhinney* (1967) 248 Cal.App.2d 116, 120; see also *Batuello v. Batuello* (1998) 64 Cal.App.4th 842, 845 [plaintiff went to college to learn business and managed vineyard in reliance on promise that he would receive vineyard, then refrained from making objection to the trust in reliance on promise he would receive vineyard as a result of settlement negotiations]; *Estate of Brenzikofer* (1996) 49 Cal.App.4th 1461, 1464 [plaintiffs cared for decedent and pets for 26 years in reliance on promise to convey property].) But here, unlike those cases, Tony's testimony showed no such change or any other promise of value in exchange for an irrevocable contractual right. He stated: "It wasn't like I was going to leave."

As for the third element (agreement to the terms of the contract), Tony cites testimony by Wally that she executed the fourth amendment to the

12

trust because of the July 31, 2005 agreement. But Wally did not testify that the July 31, 2005 agreement included an irrevocable contractual right or that she executed the fourth amendment to the trust because of or consistent with any irrevocable contractual right. Again, the fourth amendment to the trust included only a revocable devise of the Property. Indeed, Tony later requested that it be made irrevocable—a request that Wally declined.

Tony also cites notes written by Wally's accountant in August 2005 that stated: "Waldtraut wants to provide that Anthony receive a 100% interest in 42270 Osgood." But these notes reflect a *prospective* intent to distribute the Property to Tony, which is consistent with Wally's subsequent execution of the fourth amendment to the trust, not a contract already agreed to on July 31, 2005. And the accountant testified that he was unaware of any contractual agreement for distribution of the Property.

Finally, Tony cites testimony by his wife Suzanne that she first learned of the July 31, 2005 agreement from him and a few days later, Wally confirmed that she was giving the Property to Tony. Specifically, Suzanne testified that Wally said "she was doing the business and the land." We agree with the trial court that this witness had no direct knowledge of the July 31, 2005 conversation, and her testimony did not prove clear terms to establish an irrevocable contractual right (versus revocable devise of the Property), let alone proof that outweighed the evidence that no such contract had been made.

In sum, we conclude there was substantial evidence to support the judgment.

## DISPOSITION

The judgment is affirmed. Defendant Waldtraut Betchart is entitled to her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

13

_____

                                   RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(*Betchart v. Betchart A167024*)

14